848 F.2d 1047
 25 Fed. R. Evid. Serv. 1324
 Franklin J. ZIMMERMAN and Donald F. Gratz,
Plaintiffs-Appellees/Cross- Appellants,
v.
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF RAPID CITY,
S.D.; First Federal Savings and Loan Association of Sioux
Falls, S.D.; First Federal Savings and Loan Association of
Watertown, S.D.; United Federal Savings and Loan
Association of Aberdeen, S.D.; First Dakota Home Savings
and Loan Association of Pierre, S.D.; Yankton Savings and
Loan Association of Yankton, S.D.; Lloyd K. Pugh, an
individual; Frank E. Everett, an individual; Floyd Snyder,
Jr., an individual; Curtis L. Cameron, an individual; E.W.
Boyles, an individual; John P. Clark, an individual;
Defendants-Appellees.
and,
Donald R. Winship, individual Defendant Intervenor-Appellee,
and
Western Plains Service Corporation, a South Dakota
corporation; Delbert M. Bjordahl, an individual; Ron L.
Brown, an individual; and dba the Radi Group, a
partnership, Defendants-Appellants/Cross-Appellees.
 Nos. 84-1586, 84-1631.
 United States Court of Appeals,
Tenth Circuit.
 June 6, 1988.
 
 Paul J. Hickey, of Bagley, Hickey, Evans & Statkus, Cheyenne, Wyo., and John M. Law and Thomas McDonald, of Law and Knous, Denver, Colo., for defendants-appellees First Federal Sav. and Loan Ass'n of Rapid City, S.D., First Federal Sav. and Loan Ass'n of Sioux Falls, S.D., First Federal Sav. and Loan Ass'n of Watertown, S.D., United Federal Sav. and Loan Ass'n of Aberdeen, S.D., First Dakota Home Sav. and Loan Ass'n of Pierre, S.D., Yankton Sav. and Loan Ass'n of Yankton, S.D., Lloyd K. Pugh, Frank E. Everett, Floyd Snyder, Jr., Curtis L. Cameron, E.W. Boyles, and John P. Clark.
 G. Verne Goodsell, of Wilson, Olson, Goodsell & Nash, P.C., Rapid City, S.D., and Nicholas G. Kalokathis, of Lathrop & Uchner, P.C., Cheyenne, Wyo., for defendants-appellants/cross-appellees Ron L. Brown, Delbert M. Bjordahl, and Western Plains Service Corp.
 Cameron S. Walker, of Schwartz, Bon, McCrary & Walker, Casper, Wyo., for individual defendant intervenor-appellee Donald R. Winship.
 Franklin J. Zimmerman and Donald F. Gratz, pro se.
 Before McKAY, ANDERSON and TACHA, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Western Plains Service Corporation (WPSC) was a savings and loan service company that packaged, serviced, and sold loans made by other banks or associations. Its shareholders were sixteen South Dakota savings and loan associations. Plaintiffs Donald Gratz and Franklin Zimmerman brought this suit against WPSC, Delbert Bjordahl (president of WPSC), Ron Brown (an employee of WPSC), certain of the shareholder S & Ls, and certain members of WPSC's board of directors who were also officers of the S & Ls involved. Plaintiffs also sued Donald Winship, an attorney who had represented both WPSC and the plaintiffs at various times.
 
 
 2
 Plaintiffs planned to build a housing development in Gillette, Wyoming. They allege that WPSC agreed to loan them 2.2 million dollars to finance their project, and that WPSC provided only $600,000 and then wrongfully foreclosed on the project in a suit brought in 1981. Plaintiffs did not answer the complaint in the foreclosure suit, and the court entered a default judgment against them. Plaintiffs subsequently brought the separate action which underlies this appeal. At trial plaintiffs based their claims against WPSC, Bjordahl, and Brown on theories of breach of contract, promissory estoppel, and fraud. They charged the S & L officers with negligent supervision of Bjordahl and Brown. They charged Winship with breaching a fiduciary duty, deceit or collusion, and interfering with a contract. The district court granted a directed verdict motion in favor of the S & L officers on the negligent supervision claim. The jury found against plaintiffs on all remaining claims except promissory estoppel. On that claim the jury awarded plaintiffs 1.5 million dollars in damages. Plaintiffs and WPSC both appeal.[1]
 
 
 3
 I. Plaintiffs' Claims on Appeal.
 
 A.
 
 4
 At trial the plaintiffs asked the district court to grant judgment notwithstanding the verdict on their claim that the corporate veil of Western Plains should be pierced and the individual S & L-shareholders held liable. The plaintiffs appeal the denial of this motion.
 
 
 5
 Although we apply the substantive law of Wyoming in this diversity case, we follow the federal standard for determining whether the court properly denied the motion for judgment n.o.v. Suggs v. State Farm Fire and Casualty Co., 833 F.2d 883, 887 n. 5 (10th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). Under this standard, we may find error only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party for whom the jury found; we must construe the evidence and inferences most favorably to the nonmoving party. EEOC v. Prudential Fed. Sav. and Loan Ass'n, 763 F.2d 1166, 1171 (10th Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985).
 
 
 6
 Wyoming law on piercing the corporate veil provides that "[f]or a corporation to be accorded treatment as a separate entity, it must exist and function as such and not be the alter ego of the person owning and controlling it and cannot be used or ignored just to fit the convenience of the individual." Amfac Mechanical Supply Co. v. Federer, 645 P.2d 73, 79 (Wyo.1982). "Before a corporation's acts will be considered to be those of a specific stockholder, it must be made to appear that the corporation is not only influenced and governed by that stockholder, but that there is such a unity of interest and ownership that the individuality or separateness of the corporation and stockholder has ceased." Kloefkorn-Ballard Constr. & Dev., Inc. v. North Big Horn Hosp. Dist., 683 P.2d 656, 661 (Wyo.1984).
 
 
 7
 In this case the jury determined that WPSC was not the alter ego of the S & Ls. There is evidence in the record to support the conclusion that WPSC and the S & Ls were operated as separate legal entities with independent decision-making processes. For example, evidence was presented indicating that WPSC was engaged in the legal and customary business of a service corporation, that WPSC and the S & Ls had separate bank accounts and accounting systems as well as separate staffs and offices, and that the directors did not manage the day-to-day operations of WPSC. There was also evidence that the S & Ls did not pay any salaries of WPSC employees nor any of its expenses. Finally, there was testimony that the capital structure of WPSC was adequate. Thus, the evidence regarding the separateness of WPSC and the S & Ls supports the jury's finding, and the verdict must stand.
 
 B.
 
 8
 The next issue is whether the trial court properly granted a directed verdict in favor of the directors of WPSC on the theory that they breached their duty to supervise corporate affairs. We apply the substantive law of Wyoming but the federal standard for determining whether the court erred in granting the directed verdict motion. See Suggs, 833 F.2d at 887 n. 5.
 
 
 9
 "Motions for a directed verdict and for judgment n.o.v. are considered under the same standard." Hurd v. American Hoist and Derrick Co., 734 F.2d 495, 498 (10th Cir.1984). Therefore, we must determine whether, under the evidence presented, the jury could properly find a verdict for the plaintiffs. Id. at 499.
 
 
 10
 Plaintiffs allege that the directors of WPSC breached their duty as directors to supervise the corporation's affairs. We note initially that the duty to supervise corporate employees is owed principally to the shareholders of the corporation. This suit is not brought on behalf of WPSC's shareholders but by a third party. Wyoming courts have not spoken on the duty of corporate directors to third parties. This court has held that an officer of a corporation is liable to a third party if he or she "directs or participates actively in the commission of a tortious act...." Lobato v. Pay Less Drug Stores, 261 F.2d 406, 408 (10th Cir.1958). However, "[s]pecific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation." Id. at 409. We hold that Wyoming courts would apply the general rule we stated in Lobato. See also Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 907 (1st Cir.1980) (the general rule requires "some showing of direct personal involvement").
 
 
 11
 The harm plaintiffs suffered stemmed from the breach of an alleged promise to loan them 2.2 million dollars. Therefore, we must determine whether plaintiffs offered sufficient evidence showing that the directors of WPSC specifically directed or sanctioned, or actively participated in the promise to make this loan. We find nothing in the record to suggest that the directors even knew of, much less actively participated in, the promise to lend 2.2 million dollars. The jury could not have properly found for the plaintiffs on this claim. Therefore, the district court correctly granted the directors' motion for a directed verdict.
 
 C.
 
 12
 We now turn to plaintiffs' claim that the court's failure to instruct the jury on punitive damages is reversible error. Assuming there was error in this regard, we hold that it was harmless. An award of punitive damages would be justified only if defendants engaged in "wanton and willful misconduct." Danculovich v. Brown, 593 P.2d 187, 191 (Wyo.1979). In its findings on the fraud claim, the jury found that defendants did not knowingly or recklessly make a misrepresentation intended to deceive plaintiffs. This finding would preclude an award of punitive damages on the promissory estoppel claim--the only claim on which plaintiffs were successful. Therefore the error, if any, was harmless.
 
 
 13
 II. WPSC's Claims on Cross-Appeal.
 
 
 14
 The next set of issues is raised in the cross-appeal of WPSC, Bjordahl, and Brown.
 
 
 15
 A. Preclusive Effect of Prior Suit.
 
 
 16
 In 1981 WPSC obtained a default judgment in an action seeking foreclosure on plaintiffs' housing development and seeking judgment against the plaintiffs for the amount of the loan plus interest. After the entry of the default judgment in the foreclosure case, plaintiffs filed two motions under Fed.R.Civ.P. 60(b) requesting relief from the judgment. In each motion plaintiffs raised essentially the same arguments as they do in this case. The district court denied both motions. Plaintiffs did not appeal.
 
 
 17
 WPSC argues that the present suit is barred for two reasons related to the foreclosure suit. First, WPSC claims that the promissory estoppel claim raised here should have been raised as a compulsory counterclaim in the foreclosure action and that failure to raise the claim in the earlier suit bars plaintiffs from urging the issue in this case.
 
 Fed.R.Civ.P. 13(a) provides:
 
 18
 A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.
 
 
 19
 Failure to make a counterclaim that falls within the ambit of Rule 13(a) ordinarily bars a party from making the same claim against the prior opponent in a subsequent proceeding. See Pipeliners Local Union No. 798, Tulsa, Okla. v. Ellerd, 503 F.2d 1193, 1198 (10th Cir.1974). Courts have generally attributed the Rule's preclusive effect to the doctrines of res judicata or waiver and estoppel. See, e.g., Cleckner v. Republic Van and Storage Co., 556 F.2d 766, 769 (5th Cir.1977) (principles of res judicata govern); Dindo v. Whitney, 451 F.2d 1, 3 (1st Cir.1971) (estoppel); see also 6 C. Wright and A. Miller, Federal Practice and Procedure Sec. 1417 (1971). We find it unnecessary in this case to rely on these specific legal concepts because "the Rules themselves, under a fair construction, bring about the same result." Lawhorn v. Atlantic Ref. Co., 299 F.2d 353, 356 (5th Cir.1962).
 
 
 20
 We agree, however, with the district court in this case that, given the special circumstances, plaintiffs' failure to bring a counterclaim in the foreclosure action does not bar them from seeking relief against WPSC in the present suit. Plaintiffs allege that they were induced by WPSC not to answer the complaint in the prior action. They claim that WPSC's attorney, Donald Winship, was also advising them and that he told them not to contest the suit in exchange for WPSC's promise to finance a prospective buyer of plaintiffs' housing development. The district court noted the existence of several facts that support these assertions. For example, Winship admitted to the court that he had spoken to plaintiff Gratz concerning the sale of the development. Winship also said plaintiffs had access to his office for having a sales agreement typed and reviewed by him. After the foreclosure, Winship advised plaintiffs concerning the nature of the foreclosure sale and the significance of various periods of redemption. These facts support plaintiffs' contention that an agreement existed between WPSC, Winship, and plaintiffs. The district court was persuaded that, given this arrangement, plaintiffs did not have a fair opportunity to bring their counterclaim. Under the facts of this case as the court found them, we cannot say that the court erred.
 
 
 21
 Second, WPSC alleges that failure to appeal from the denials of the Rule 60(b) motions prevents plaintiffs from bringing an independent action on the same grounds. Resort to independent action may be had only under unusual and exceptional circumstances. Crosby v. Mills, 413 F.2d 1273, 1276 (10th Cir.1969); see also Winfield Assocs. v. Stonecipher, 429 F.2d 1087, 1090 (10th Cir.1970) (outlining specific requirements). Nevertheless, "granting of relief in this unusual type of proceeding lies largely within the discretion of the trial judge." Stonecipher, 429 F.2d at 1090. We find no abuse of discretion in this case. The court found that shortly before the filing of the foreclosure suit the plaintiffs formally lost the services of attorney Winship who had represented them during the entire deal. The court also found that plaintiffs were not able to retain new counsel before the time for appeal had lapsed and therefore decided to file an independent action. Furthermore, the court found that plaintiffs based this decision in part on a possibly misleading statement the court made in a prior proceeding. On these facts we cannot say that the court abused its discretion in holding that plaintiffs' claims were not barred by their failure to appeal the denial of their Rule 60(b) motions.
 
 
 22
 B. Promissory Estoppel.
 
 
 23
 WPSC, Brown, and Bjordahl (WPSC) raise several claims regarding promissory estoppel. First, WPSC contends that the trial court erred in submitting the issue of promissory estoppel to the jury. Wyoming law states, "Before an instruction can be given, there must be evidence before a jury upon which they may apply the rule of law given by the court." Beard v. Brown, 616 P.2d 726, 733 (Wyo.1980). The test under Wyoming law is whether there is evidence in the record to support the following elements of promissory estoppel: "(1) that the party lacked the knowledge of the facts and was without means to discover them; and (2) that he relied upon the actions of the parties sought to be charged and changed his position." Roth v. First Sec. Bank, 684 P.2d 93, 96 (Wyo.1984). There is evidence in the record supporting each of these elements. The district court was correct to instruct the jury on promissory estoppel.
 
 
 24
 WPSC argues, however, that even if a promissory estoppel instruction was proper, the instruction given was defective because it did not require the jury to consider whether plaintiffs were "without the means to discover" the facts. Defendants did not object on this ground to the instruction given.
 
 
 25
 "[I]n a civil case each party must live with the legal theory reflected in instructions to which it does not object." Davis v. Consolidated Rail Corp., 788 F.2d 1260, 1268 (7th Cir.1986) (quoting Will v. Comprehensive Accounting Corp., 776 F.2d 665, 675 (7th Cir.1985), cert. denied, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986)). Therefore, "[t]his court will not review instructions given to which no objections were lodged before the jury retired for deliberation unless they are patently plainly erroneous and prejudicial." Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 924 (10th Cir.), cert. denied, 469 U.S. 853, 105 S.Ct. 176, 83 L.Ed.2d 110 (1984). See also Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1516 (10th Cir.1984) ("where an objection to an instruction is not made before the jury retires for deliberation, we only review an instruction that is 'patently plainly erroneous and prejudicial' "), aff'd, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985); Fabian v. E.W. Bliss Co., 582 F.2d 1257, 1260 (10th Cir.1978) ("In civil cases only rarely will we review error when a specific objection was not made at trial."); Clegg v. Conk, 507 F.2d 1351, 1362 (10th Cir.1974) (party claiming plain error has "heavy burden of demonstrating fundamental injustice"), cert. denied, 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975). The instruction given in this case was not "patently plainly erroneous and prejudicial." We therefore decline to review the aspect of it to which WPSC now objects.
 
 
 26
 WPSC raises a final issue regarding the promissory estoppel instruction. WPSC argues plaintiffs had a duty to make clear when they closed the deal for the $600,000 loan that they expected to receive a total of 2.2 million dollars. WPSC asked the court to instruct the jury that "silence, when there is a duty to speak, is deemed equivalent to concealment." The court did not give this instruction and ruled that WPSC was deemed to have objected to its omission. The issue is therefore preserved for appeal.
 
 
 27
 Nothing in the facts of this case suggests plaintiffs had a "duty to speak." Such a duty might have arisen if WPSC had said when they closed the $600,000 loan that they felt bound to loan no more money. Under such circumstances plaintiffs may have had a duty to speak up about their understanding of the deal, and the instruction may have been appropriate. Under the facts of this case the requested instruction was properly refused.
 
 
 28
 C. Statute of Frauds.
 
 
 29
 At trial WPSC moved for summary judgment on the ground that plaintiffs' claim is barred under the Wyoming statute of frauds. That statute provides that "[e]very agreement that by its terms is not to be performed within one (1) year from the making thereof" is void "unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith...." Wyo.Stat. Sec. 1-23-105(a) (1987) (emphasis added). The Wyoming Supreme Court has noted, "It is well settled that the oral agreements invalidated by the statute because not to be performed within a year include those only which cannot be performed within that period." Massion v. Mt. Sinai Congregation, 40 Wyo. 297, 276 P. 930, 932 (1929) (quoting 1 Williston on Contracts Sec. 504 at 966) (emphasis added). More recently the court stated, "If a contract cannot by its terms be performed within one year, it must comply with the writing requirement found within the statute [of frauds]." Bereman v. Bereman, 645 P.2d 1155, 1159 (Wyo.1982) (emphasis added).
 
 
 30
 The oral agreement to loan 2.2 million dollars does not fall within this statute. Nothing in the terms of the oral agreement involved here makes it impossible for performance to be completed within one year. Plaintiffs could have borrowed the 2.2 million dollars and within a year sufficiently developed the project to allow them to sell it and with the proceeds pay back the entire loan. The statute of frauds does not apply; the trial court did not err.
 
 
 31
 D. Lost Future Profits.
 
 
 32
 At trial the jury awarded plaintiffs 1.5 million dollars in damages. WPSC claims that this award was based on lost future profits and that such profits may not be awarded in this case for several reasons.
 
 
 33
 WPSC argues that lost future profits are not compensable under the theory of promissory estoppel. WPSC claims this issue is preserved for appeal. Their brief states, "The jury was instructed, over objection, that they may award lost future profits under the promissory estoppel theory." This statement is misleading; we find no such objection nor instruction in the record. First, WPSC did not argue to the district court that lost profits are not recoverable in promissory estoppel. The objections that were made all went to the alleged speculative nature of the evidence on lost profits. Second, the jury was not instructed, as WPSC now claims, that it could "award lost profits under the promissory estoppel theory." Instead, the jury was told: "If you should find ... in favor of [plaintiffs] on their claim of breach of contract then you may award them their actual damages.... [Y]ou may award as such damages ... any loss of net profits." (Emphasis added.)
 
 
 34
 If there was error in the instructions it was not in the giving of the breach-of-contract instruction just quoted, but in the failure to give a further instruction telling the jury what form of damages to award if it found against plaintiffs on the breach-of-contract claim but in their favor on the issue of promissory estoppel. No such instruction was requested nor its omission objected to. Apparently WPSC did rely on the lost-future-profits argument in its motion for judgment n.o.v., but Fed.R.Civ.P. 51 provides that a party may not assign as error the failure to give an instruction unless objection is made "before the jury retires to consider its verdict." WPSC's objection came too late. The court could have rectified the error WPSC alleges occurred if WPSC had called it to its attention by timely and specific objection. We therefore hold that this issue was not properly preserved for appeal.
 
 
 35
 Furthermore, even if we were to agree with WPSC that Wyoming law forbids the award of lost profits in promissory estoppel cases, see Restatement (Second) of Contracts Sec. 90 illustrations 8 and 10 (1979); Tremblay v. Reid, 700 P.2d 391, 395 n. 1 (Wyo.1985) (the Wyoming Supreme Court has "essentially adopted" Sec. 90 of the Restatement), we cannot say that the alleged error in this case is "patently plainly erroneous and prejudicial." Moe, 727 F.2d at 924. First, WPSC has not established that a significant portion of the jury's award was based on lost profits. There is evidence that plaintiffs spent a considerable amount of money in reliance on WPSC's promise. In addition, there is evidence that plaintiffs had already made a profit on their project and received an offer to take over the uncompleted project for payments totaling $1,768,500. A reasonable jury, when properly instructed, could return a sizeable verdict. We cannot say that an award of 1.5 million dollars is "patently plainly erroneous and prejudicial." Therefore, no exception to the waiver rule is warranted.
 
 
 36
 WPSC also claims that even if lost profits can be recovered under a theory of promissory estoppel generally, in this case the lost future profits were speculative and therefore could not be recovered. It argues that "[t]he Wyoming Supreme Court has never allowed a verdict to stand awarding lost future profits based on evidence as flimsy as that adduced in this case." WPSC seems to be arguing that the trial court erred in denying their motion for judgment n.o.v. on this issue because the evidence was insufficient to sustain the award. As we said above, judgment n.o.v. is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the opposite position. Prudential Fed., 763 F.2d at 1171.
 
 
 37
 We note initially that there is evidence of substantial reliance damages--it may be that the verdict contains no award for future profits at all. Since we must construe the evidence and inferences in favor of plaintiffs, this alone may be sufficient to uphold the verdict. In addition, the jury was carefully and repeatedly instructed not to award any speculative damages. Unless there is no evidence supporting the verdict under Wyoming law, we must assume that the jury followed the instruction given. Garrick v. City and County of Denver, 652 F.2d 969, 971 (10th Cir.1981).
 
 
 38
 Wyoming law requires that plaintiffs prove lost profits with "reasonable certainty"; however, "absolute certainty with respect to proving loss of future profits is not required." Landmark, Inc. v. Stockmen's Bank & Trust Co., 680 P.2d 471, 476 (Wyo.1984); see also Albin Elevator Co. v. Pavlica, 649 P.2d 187, 191-92 (Wyo.1982) (applying the "reasonable certainty" test). Plaintiffs presented sufficient evidence to support the jury's award under the reasonable certainty test. For example, there was evidence at trial of a preliminary appraisal estimating the value of the completed project at between fifteen and sixteen million dollars. There was also evidence of sales projections which, if believed by the jury, would justify a significant award. To support the sales projections, plaintiffs offered evidence that economic growth and increased housing needs were forecast for the area. Therefore, even if we assume that a portion of the 1.5-million-dollar verdict was attributable to lost profits, we cannot say that the evidence was too speculative to justify it. The court did not err in denying WPSC's motion for judgment n.o.v. on this ground.
 
 
 39
 E. Real Party in Interest.
 
 
 40
 The district court denied WPSC's motion to dismiss plaintiffs Gratz and Zimmerman as individuals and to require joinder of a limited partnership formed by them to develop the housing project. We agree with the district court that Gratz and Zimmerman were pursuing claims for damages incurred by them personally; plaintiffs' housing development was held in Gratz's name. Although the profits from the project may have been intended to go to the limited partnership that was subsequently formed, it was not error to allow Gratz and Zimmerman to pursue the lawsuit in their own names. "[A] party ... in whose name a contract has been made for the benefit of another ... may sue in that person's own name without joining with him the party for whose benefit the action is brought...." Fed.R.Civ.P. 17(a).
 
 
 41
 F. Evidence of WPSC's Prior Dealings.
 
 
 42
 The district court allowed the jury to hear evidence of other instances in which WPSC had promised to loan money for a project and subsequently foreclosed before loaning the entire amount. WPSC argues that such evidence was inadmissible under Fed.R.Evid. 404(b) which provides:
 
 
 43
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 44
 This rule allows the admission of evidence of "other 'crimes, wrongs, or acts' unless the only purpose for their admission is to prove the ... disposition of the defendant." United States v. Harenberg, 732 F.2d 1507, 1515 (10th Cir.1984) (emphasis original). Here there were legitimate reasons to offer the evidence other than to show that WPSC acted in conformity with the disposition allegedly suggested by the other foreclosures. Plaintiffs contend that WPSC never intended to loan them the full amount necessary to develop the project and that WPSC planned all along to gain possession of the project through foreclosure. Evidence that WPSC failed to advance the promised amount in other deals and then foreclosed would, if believed, support plaintiffs' position regarding WPSC's motive, intent, or plan. Evidence offered for this purpose is expressly admissible under Rule 404(b).
 
 
 45
 WPSC also contends that, even if it is otherwise admissible, the evidence should have been excluded because its prejudicial nature outweighed its probative value. We will reverse only if the trial court abused its discretion. United States v. Hart, 729 F.2d 662, 669 (10th Cir.1984), cert. denied, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985). We hold that it did not. The district court did not err in admitting the evidence.
 
 
 46
 G. Evidence of Gratz's Prior Convictions.
 
 
 47
 In 1951 and again in 1958 plaintiff Gratz was convicted and sentenced to prison for passing bad checks. He was released from prison in 1965. WPSC argues that the trial court erred in refusing to allow it to present evidence of these convictions to the jury in order to impeach Gratz. Since more than ten years had elapsed between Gratz's release from prison and trial, the admissibility of the evidence is determined under Fed.R.Evid. 609(b). That rule provides, among other things, that stale convictions are admissible only if the court determines "that the probative value of the conviction ... substantially outweighs its prejudicial effect." (Emphasis added.) See United States v. Greschner, 802 F.2d 373, 382 n. 11 (10th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). The trial court made a clear finding that the prejudicial effect of the conviction outweighed its probative value. This was not an abuse of discretion.
 
 
 48
 H. Liability of Brown and Bjordahl as Agents of WPSC.
 
 
 49
 The jury in this case found against Western Plains Service Corporation and against its employees Brown and Bjordahl on the promissory estoppel claim. The jury awarded damages against all three defendants. WPSC, Brown, and Bjordahl argue that Brown and Bjordahl were agents of Western Plains acting within the scope of their employment and therefore cannot be held liable for their corporation's failure to keep its promise to loan plaintiffs 2.2 million dollars.
 
 
 50
 The court gave the jury no instruction on how to determine which of the defendants could be held liable under a theory of promissory estoppel. So, WPSC does not argue that the jury misapplied the law as it was given to them. Their claim of error, then, necessarily goes to the incompleteness of the instructions. However, the defendants neither requested an appropriate instruction nor objected to its absence. By failing to lodge a timely objection to the incomplete instructions before the jury retired to deliberate, WPSC waived this argument. Thus, we will reverse only if the error was "patently plainly erroneous and prejudicial," Moe, 727 F.2d at 924, and "resulted in a miscarriage of justice," Brown v. McGraw-Edison Co., 736 F.2d 609, 614 n. 6 (10th Cir.1984).
 
 
 51
 To determine whether there was reversible error we look to Wyoming law regarding the liability of agents. The test for determining agent liability differs depending on the nature of the cause of action. Wyoming follows the rule that if actions of an agent constitute a tort, the agent cannot escape liability on the ground that he or she was acting for the principal. Cline v. Sawyer, 600 P.2d 725, 727 (Wyo.1979). However, if the cause of action sounds in contract, a different rule applies. The Wyoming Supreme Court has held that "[a]n agent who contracts on behalf of a disclosed principal, in the absence of some other agreement to the contrary or other circumstances showing that he has expressly or impliedly incurred or intended to incur personal responsibility, is not liable to the other contracting party." Kure v. Chevrolet Motor Div., 581 P.2d 603, 609 (Wyo.1978). Although Wyoming has not announced which, if either, of these tests applies for determining the liability of agents in promissory estoppel, we find that Wyoming would apply contractual principles to this issue and that the Kure test governs. See Oyler v. State, 618 P.2d 1042, 1055-56 (Wyo.1980) (Raper, C.J., dissenting) (applying Kure to a promissory estoppel claim); Froelich v. Aspenal, Inc., 369 N.W.2d 37 (Minn.Ct.App.1985) (applying a contractual standard to determine agent's liability in promissory estoppel).
 
 
 52
 This is one of the rare cases in which reversal is warranted despite a failure to object. See Aspen Highlands, 738 F.2d at 1516. The jury did not consider any of the Kure requirements in determining that defendants Brown and Bjordahl were liable on the promissory estoppel claim. The jury was told what standards to apply in determining whether plaintiffs asserted a valid promissory estoppel claim, but the jury was given no guidance whatsoever in determining which of the defendants were liable. To enter judgment of 1.5 million dollars against Brown and Bjordahl when there was no determination of their individual liability is "patently plainly erroneous and prejudicial," Moe, 727 F.2d at 924, and a "miscarriage of justice," Brown, 736 F.2d at 614 n. 6. We therefore consider WPSC's arguments despite its failure to object at trial.
 
 
 53
 None of the grounds announced in Kure for holding agents liable is applicable in this case. Since Brown and Bjordahl were acting on behalf of a disclosed principal, they cannot be held liable under the first element of the Kure test. Plaintiffs do not allege that Brown and Bjordahl failed to disclose that they were acting on behalf of their corporation. Furthermore, the plaintiffs' own pleadings allege that Brown and Bjordahl were acting within the scope of their employment, and the jury so held.
 
 
 54
 The second question under Kure is whether Brown and Bjordahl agreed to accept personal liability for the promise to loan 2.2 million dollars. Plaintiffs do not allege that such an agreement existed.
 
 
 55
 Finally, the Kure test requires us to determine whether, even in the absence of an agreement, the circumstances of the transaction show that Brown and Bjordahl incurred or intended to incur personal liability. Plaintiffs argue that Brown and Bjordahl were acting on their own behalf. The only facts in the record which support this contention concern Brown and Bjordahl's compensation. There is testimony that Brown and Bjordahl each received a percentage of the loans they serviced. The plaintiffs admit that WPSC's board of directors was fully aware of the nature of Brown and Bjordahl's compensation. Furthermore the jury expressly found that Brown and Bjordahl were acting within the scope of their employment. These facts do not establish that Brown and Bjordahl incurred or intended to incur personal liability for WPSC's promise to loan plaintiffs 2.2 million dollars. We hold that, as a matter of law, Brown and Bjordahl are not liable under Kure.
 
 
 56
 The jury found that no tort was committed. Since the jury found for the plaintiffs on only the promissory estoppel claim, it would be improper for the jury to hold Brown and Bjordahl personally liable for their corporation's failure to keep its promise. We therefore reverse.
 
 
 57
 In summary, the jury should have been instructed on the law governing the liability of agents for breach of contract by the principal. Because this error was "patently plainly erroneous" and worked a "miscarriage of justice" we have considered it despite WPSC's failure to make a timely and specific objection at trial. Because the evidence is insufficient as a matter of law to hold Brown and Bjordahl liable, we reverse the judgment against them on the promissory estoppel claim.
 
 
 58
 III. Claims Against Attorney Winship.
 
 
 59
 The final group of claims in this case involves Donald Winship. Plaintiffs argue that the conduct of Winship was highly improper. However, the only legal claim they offer is their argument that the district court erred in denying their motion for a directed verdict with regard to Winship. The directed verdict motion was based on plaintiffs' allegation that there was no evidence upon which the jury could properly find a verdict for Winship. We have reviewed the record and find sufficient evidence to withstand a directed verdict motion. The district court did not err.
 
 
 60
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument