931 F.2d 62
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
CONTROL TERMINALS, INC., a Missouri corporation,
Plaintiff-Appellee/Cross-Appellant,
v.
AIRLINE MANAGEMENT GROUP, INC., a Florida corporation,
Richard Bernard, Jack Richards, and Ruth Richards,
Defendants-Appellants/Cross-Appellees,
and
Onyx Aviation, Inc., an Oklahoma corporation, Defendant.
 Nos. 89-6338, 89-6354.
 United States Court of Appeals, Tenth Circuit.
 April 19, 1991.
 
 Before McKAY and JOHN P. MOORE, Circuit Judges, and BROWN,* District Judge.
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Control Terminals, Inc., appeals a decision by the United States District Court for the Western District of Oklahoma not to adjust jury awards for contract breaches. Airline Management Group, Inc., Richard Bernard, Jack Richards, and Ruth Richards also challenge the jury awards on cross-appeal. In addition, they contest several procedural matters, the piercing of the corporate veil, the consistency of the jury awards, and the jury instructions. We affirm on all grounds.
 
 I. BACKGROUND
 
 2
 Control Terminals, Inc., is an air cargo company. Airline Management Group, Inc., leases aircraft and support services. Richard Bernard is president, a stockholder, and a director of Airline; Jack Richards is the secretary-treasurer and a director of Airline; Ruth Richards is a stockholder and director of Airline.
 
 
 3
 In October 1987, Control Terminals and Airline entered into a lease agreement under which the lessor Airline would provide aircraft as well as crew, fuel, and maintenance for four flights a week. Although the agreement states it was "entered into" on October 9, 1987, some testimony suggested it was signed later. The agreement provides the term of the lease started on October 6, 1987, and terminated January 6, 1988. In accordance with the lease, Control Terminals paid a $100,000 refundable security deposit and a $15,625 positioning fee.[1] Control Terminals also agreed to pay a depositioning fee if the contract did not extend beyond three months and an hourly rental rate of $3,750 per hour of flight time.
 
 
 4
 On March 3, 1988, Control Terminals brought suit in the United States District Court for the Western District of Oklahoma against Airline and Richard Bernard, Jack Richards, and Ruth Richards,[2] alleging several claims, including breach of contract because Airline failed to provide aircraft on scheduled days. Airline filed a counterclaim, alleging that Control Terminals breached the lease by failing to use aircraft on scheduled days and failing to pay a depositioning fee, and that Control Terminals' former president wrongfully demanded $10,316 from Airline as a condition of awarding the lease to Airline, in violation of 49 U.S.C. Sec. 1472(d)(2).
 
 
 5
 The jury's initial Verdict # 1 awarded Control Terminals "$213,000 plus any monies left from the security deposit after payment to Airline Management Group, Inc. of any monies owed for use of the airplane through December 18, 1987 as well as payment to Airline Management for 'positioning fees' at the beginning and the end of the contract." When the trial judge instructed the jury to provide a dollar figure, they computed this amount to be $298,000. The jury also pierced Airline's corporate veil, holding Richard Bernard, Jack Richards, and Ruth Richards personally liable for this amount. In Verdict # 2, addressing Airline's counterclaim, the jury awarded Airline $64,000 for Control Terminals' failure to use and pay for aircraft on all agreed days, and $10,316 to cover the payment made to Control Terminals' president.
 
 
 6
 Control Terminals filed a motion for judgment notwithstanding the verdict, arguing (1) its damages should be increased by the amount of the $100,000 security deposit it had paid to Airline; (2) damages awarded to Airline should be reduced by the amount of operating expenses saved by Airline on those days Control Terminals did not use the aircraft; and (3) the $10,316 award to Airline for wrongful payment to Control Terminals' president should be overturned because Airline does not have a private cause of action under 49 U.S.C. Sec. 1472(d)(2). Airline moved for a new trial.
 
 
 7
 The trial judge partially granted Control Terminals' motion, setting aside the award to Airline under 49 U.S.C. Sec. 1472, but denied Control Terminals' other requests as well as Airline's motion for new trial. Thus, under the final judgment, Control Terminals received $298,000, and Airline received $64,000.
 
 II. AIRLINE'S BREACH OF CONTRACT
 
 8
 The jury concluded that Airline did not provide aircraft on all the days required by the lease and awarded Control Terminals $298,000 for the breach. In its motion for judgment notwithstanding the verdict (JNOV), Control Terminals sought an increase[3] in the award. Airline, on the other hand, moved for a new trial, contending the award is excessive.
 
 
 9
 We review Control Terminals' motion for JNOV de novo, examining the evidence in the light most favorable to the nonmoving party. JNOV should be granted if the evidence points only one way and is susceptible of no reasonable inferences supporting the nonmoving party. Zimmerman v. First Fed. Savings and Loan Ass'n, 848 F.2d 1047, 1051 (10th Cir.1988). In the context of a claim for a jury award increase, we have held that "[a]bsent an award so grossly inadequate as to raise an irresistible inference that bias, prejudice, or passion invaded the trial or so as to shock the court's conscience, a jury's determination of damages will be upheld." Moore v. Subaru of Am., 891 F.2d 1445, 1451-52 (10th Cir.1989). We have also held that a jury award may be increased if necessary to meet a legal requirement. Rocky Mountain Tool & Mach. Co. v. Tecon Corp., 371 F.2d 589, 598 (10th Cir.1966) (court properly increased award against party who had to be jointly liable in amount).
 
 
 10
 Control Terminals fails to show that the jury simply miscalculated the award. It posits, based on the jury's original description of the verdict,[4] that the jury started with the wrong figure. The initial dollar figure, Control Terminals argues, should be the cost of substitute aircraft beyond the price Control Terminals would have paid Airline. Control Terminals asserts the jury mistakenly deducted the security deposit of $100,000 from that amount and arrived at the $298,000 award as follows:
 
 
 11
 $213,000 Cost of substitute aircraft beyond price which Control Terminals
 would have paid Airline, minus security deposit
 k 100,000 Security deposit
 - 15,000 Depositioning fee
 --------
 $298,000
 
 
 12
 However, Control Terminals is merely speculating, without much rational basis, that the jury began with the figure of $213,000 because it deducted the security deposit from the replacement cost. We are not convinced that the jury made a simple mathematical error. First, it is far from obvious that the starting figure should be $313,000 ($213,000 + 100,000) because, according to Control Terminals' own testimony, its excess replacement cost was about $341,000, not $313,000. Second, the record reveals dispute over the number of days on which Airline breached, which affects the replacement cost to which Control Terminals is entitled. Control Terminals asserted Airline failed to provide aircraft on eighteen days. Airline responded that three of those days occurred before the lease was signed, two involved inclement weather, and on three of those days Airline did provide aircraft. The jury may simply have decided that the $300,000 plus incurred by Control Terminals was not all caused by Airline's breach. Because the evidence permits an inference other than a simple miscalculation by the jury, Control Terminals' motion for JNOV increasing the award was properly denied.
 
 
 13
 Airline's motion for a new trial on the ground that the award is excessive is also without merit. We do not disturb the trial court's denial of such a motion unless there is "manifest abuse of discretion." Brown v. McGraw-Edison Co., 736 F.2d 609, 616 (10th Cir.1984). We see no reason to challenge the trial court's decision that the verdict amount was not "clearly, decidedly or overwhelmingly" against the weight of the evidence. Id.
 
 
 14
 Airline also asserts that Control Terminals had a duty to mitigate its damages by taking advantage of its right to cancel the lease upon Airline's failure to perform any three flights in one month. However, Control Terminals only has a duty to take reasonable steps to mitigate damages. See Hidalgo Properties, Inc. v. Wachovia Mortgage Co., 617 F.2d 196, 200 (10th Cir.1980). By finding substitute aircraft, Control Terminals took such steps because it was still able to complete responsibilities to its customers. Its duty to mitigate damages did not extend to cancelling the lease.
 
 III. CONTROL TERMINALS' BREACH OF CONTRACT
 
 15
 The jury found that Control Terminals also breached the contract by failing to use aircraft on all scheduled days. In its motion for JNOV, Control Terminals sought a reduction in the jury's $64,000 award to Airline. Again, we review this claim de novo and consider whether there is any reasonable inference which could support the verdict.[5] Remittitur is appropriate only when the error in the verdict results from a specific misconception on the part of the jury and can be mechanically corrected without resolving a disputed issue of fact. Big John, B.V. v. Indian Head Grain Co., 718 F.2d 143, 150 (5th Cir.1983); United States Potash Co. v. McNutt, 70 F.2d 126, 132 (10th Cir.1934).
 
 
 16
 Control Terminals argues Airline is entitled only to lost profits and that $64,000 reflects the full contract price without subtracting expenses which Airline did not have to incur because of the breach. Although Control Terminals builds a plausible case for remittitur, we believe there are reasonable inferences which could support the verdict. Our efforts to confirm Control Terminals' argument simply demonstrate the danger of second-guessing the jury's factual conclusions.
 
 
 17
 Control Terminals' contention hinges on the assumption that the jury found it was guilty of breaching the contract on two days. Control Terminals also assumes the jury rounded up the rental fee of $3,750 per hour to $4,000 per hour and rounded down the hours of flight time per day from 8.1 hours to 8 hours. Therefore, it asserts, the jury reached its $64,000 award by multiplying 2 days X 8 hours per day X $4,000 per hour. Reducing this gross amount by the expenses Airline would have incurred if its aircraft had been used on two days, Control Terminals claims the proper award is $11,900:
 
 
 18
 $64,000
 - 34,000 (aircraft sublease and crew costs)[6]
 - 18,100 (fuel costs)[7]
 -------
 $11,900
 
 
 19
 The scenario painted by Control Terminals has flaws, and it is not the only possible scenario. Control Terminals has only a speculative basis for concluding the jury rounded its figures. Without such an adjustment, the jury award would have been $60,750 ($3,750 X 8.1 X 2). More importantly, the record does not confirm the fuel cost figure contended by Control Terminals because the cited exhibit has not been designated in the record on appeal.
 
 
 20
 Finally, an alternate set of inferences could as easily support the verdict. Airline contends Control Terminals breached the lease on seven days, not two. If the jury started with that conclusion, its calculations might have looked like this:
 
 
 21
 $212,625 ($3,750 x 8.1 hours per day x 7 days)
 - 119,070 ($2,100 x 8.1 hours per day x 7 days)
 --------
 93,555
 - ??? (unspecified fuel costs)
 --------
 ???
 
 
 22
 Remittitur under Control Terminals' theory depends on resolving the factual question of the number of days on which Control Terminals breached. The record reveals that Control Terminals did not use aircraft on twelve days, November 26, December 21-24, December 28-31, and January 4-6. Because the lease permitted some cancellations by Control Terminals, these nonuses were not all breaches. The parties differ in their interpretations of the cancellation provision, which stated: "During the term of this Agreement, Lessor grants the option to Lessee to cancel five (5) flights, without penalty, for recognized national holidays and/or during the period of December 20, 1987, to January 4, 1988...." Airline contends this gave Control Terminals the right to cancel a total of five flights. Control Terminals asserts that the clause creates the right to ten cancellations, five on holidays and five between December 20 and January 4. Because of this factual dispute, we hold Control Terminals has not met the JNOV standard of showing that the evidence points only towards a mechanical error.
 
 IV. PROCEDURAL ISSUES
 
 23
 In their cross-appeal, Airline, Richard Bernard, Jack Richards, and Ruth Richards raise a host of procedural challenges. We reject them all. At oral argument, defendants conceded they have waived the right to challenge Control Terminals' capacity to sue, and that federal diversity jurisdiction is proper. We conclude defendants have also waived the right to challenge venue and the joinder of Ruth Richards as a defendant because, as the trial court noted, these issues were not included in the Final Pretrial Order which sets forth the issues before the court. Fed.R.Civ.Proc. 16(e).
 
 
 24
 Defendants also argue that suit against the directors and shareholders of Airline is premature. Relying on Oklahoma law, they argue suit cannot be brought against directors or shareholders until judgment has been obtained against the corporation and returned unsatisfied. Okla.Stat.Ann. tit. 18, Sec. 1124 (West 1991). However, the trial court concluded this provision does not apply when the corporate form is a sham. Moreover, according to the terms of the lease, Michigan, not Oklahoma, law governs any disputes arising out of the lease.
 
 V. PIERCING AIRLINE'S CORPORATE VEIL
 
 25
 Defendants appeal the jury's decision to hold Richard Bernard, Jack Richards, and Ruth Richards personally liable for Airline's breach, seeking (1) a new trial because the decision to pierce the corporate veil was "totally unsupported in the evidence" and (2) reversal of the judgment because the jury instruction was erroneous.
 
 
 26
 Keeping in mind that a new trial will not be granted unless the jury's verdict is "clearly, decidedly or overwhelmingly" against the weight of the evidence, we affirm the trial court because we find no abuse of discretion in its decision. See Brown, 736 F.2d at 616. Beyond asserting that they all testified corporate records and requirements were met, defendants provide little proof indicating the veil should not be pierced. Control Terminals cites testimony showing that Airline's corporate form was a sham. Corporate formalities, such as a clear division of stock ownership, formal shareholder meetings, and record keeping, were not always observed; Airline was not adequately capitalized; no dividends were paid; and less than arm's length transactions, such as unsigned loans and random salary payments, were conducted with the individual defendants.
 
 
 27
 Defendants offered their own instruction on the issue of piercing the corporate veil, but that action does not constitute an objection to the court's instruction. In such circumstances, we will not review the instruction unless it is " 'patently plainly erroneous and prejudicial.' " Zimmerman, 848 F.2d at 1054 (citation omitted). The trial court instructed the jury to consider: disregard of corporate formalities, commingling of funds, failure to maintain corporate records, nature of ownership and control, undercapitalization, and diversion of corporate funds to noncorporate uses. This instruction accords with generally accepted law on the corporate form. See H. Henn & J. Alexander, Laws of Corporations, Sec. 147, at 353, n. 6 (3d ed. 1990); 1 W. Fletcher, Cyclopedia of the Law of Private Corporations Sec. 41.30, at 663 (rev.perm.ed.1990).
 
 VI. CONSISTENCY OF JURY VERDICTS
 
 28
 The jury's initial description of Verdict # 1 awarded Control Terminals damages for Airline's breach less payment to Airline of monies owed for aircraft used and positioning fees. In its Verdict # 2, the jury awarded Airline $64,000. Airline contends these verdicts are inconsistent, because "the jury supposedly ascertained Airline's damages [in Verdict # 2] yet still left calculations as to monies due Airline to be performed under verdict # 1." No inconsistency exists between the two verdicts. Verdict # 1 computes Airline's liability to Control Terminals for failure to provide aircraft and subtracts any money owed to Airline under the contract for uses of aircraft. Verdict # 2 computes Control Terminals' liability to Airline for failure to use aircraft on scheduled days, an entirely separate matter.
 
 VII. JURY INSTRUCTIONS
 
 29
 Defendants did not raise any of these objections at trial, so we review only for plain error. Zimmerman, 848 F.2d at 1054. Jury instructions need only convey the proper issues and standards to the jury. Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 (10th Cir.1988). We find no errors in the instructions.
 
 Briefly, defendants argue:
 
 30
 (1) The court's supplementary instruction requiring the jury to quantify the damage award to Control Terminals failed to properly instruct the jury on respective awards to Control Terminals and Airline. This complaint appears to be merely a twist on the inconsistent verdicts argument and is equally without merit.
 
 
 31
 (2) The court's instruction to the jury on breach of contract did not adequately convey the plaintiff's burden of proving the effective date of the lease. Defendants' proposed instruction stated in part that Control Terminals had to prove by a preponderance of the evidence "a contract existed and the effective date of that contract." The court charged the jury almost identically with finding "a contract existed on the dates alleged by the plaintiff" by a preponderance of the evidence. The court's reference in its Preliminary Statement to the parties "enter[ing] into a three-month lease agreement" does not amount to plain error.
 
 
 32
 (3) The court failed to give Airline's requested instruction for punitive damages because of Control Terminals' demand for a kickback. Because the trial court ultimately held that Airline had no standing to challenge the kickback and Airline does not appeal this ruling, we hold this instruction challenge moot.
 
 
 33
 AFFIRMED.
 
 
 
 *
 Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The positioning fee covered the cost of flying the aircraft empty from its base in Florida to El Paso, Texas, where Control Terminals needed to use the aircraft
 
 
 [2]
 Control Terminals also sued Onyx Aviation, Inc., which provided the fuel. The jury found in favor of Onyx, and Onyx is not involved in this appeal
 
 
 [3]
 Airline erroneously attempts to defeat Control Terminals' claim by characterizing it as a claim for additur. Black's Law Dictionary defines additur as an increase in a jury verdict given as a condition of denying a plaintiff's motion for new trial, with the consent of the defendant. The Supreme Court prohibited this practice in Dimick v. Schiedt, 293 U.S. 474 (1935), holding that under the Seventh Amendment, a trial court cannot deny plaintiff's motion for a new trial because of defendant's willingness to accept an increase in the jury award
 
 
 [4]
 The jury initially stated its verdict as follows: "$213,000 plus any monies left from the security deposit after payment to Airline of any monies owed for use of the aircraft as well as payment for positioning fees at the beginning and end of the contract."
 
 
 [5]
 Although we review a trial court's decision on a motion for remittitur for abuse of discretion, Royal College Shop, Inc. v. Northern Ins. Co. of N.Y., 895 F.2d 670, 677 (10th Cir.1990), we evaluate Control Terminals' claim according to the type of motion it brought. Both the JNOV and remittitur standards give considerable deference to the factfinder
 
 
 [6]
 The parties agree that Airline subleased aircraft and crew at the rate of $2,100 per hour ($2,100 X 8.1 X 2 = $34,020)
 
 
 [7]
 For this figure, Control Terminals cites to an exhibit which is not designated in the record on appeal. Airline does not contest the figure