UNITED STATES COURT OF APPEALS
**Filed 12/24/96**
FOR THE TENTH CIRCUIT

UNITED STATES of AMERICA for the use of JDL, Inc., doing business as Front Range Asbestos Removal and Front Range Environmental,

        Plaintiff-Counter-
        Defendant-Appellee,

v.

MICHAEL MARTINEZ, doing business as Rio Construction,

        Defendant-Counter-
        Claimant-Appellant,

and

AMERICAN BONDING COMPANY, an Arizona corporation,

        Defendant-Appellant.

.

No. 95-1388
(D.C. No. 93-K-1367)
(D. Colo.)

ORDER AND JUDGMENT[*]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before EBEL and HENRY, Circuit Judges, and DOWNES,** District Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendant-counter-claimant Rio Construction (Rio) appeals from a jury verdict against it and in favor of plaintiff-counter-defendant Front Range Asbestos Removal and Front Range Environmental (Front Range) in this action filed under the Miller Act, 40 U.S.C. §§ 270a-270d. We have jurisdiction under 28 U.S.C. § 1291, and affirm.

The facts at trial, taken in the light most favorable to Front Range as the prevailing party, Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett, 24 F.3d 136, 142 (10th Cir. 1994), are as follows. Rio was the prime contractor on a construction project at Fitzsimmons Army Medical Center that included the removal and replacement of steam pipes running through concrete-lined tunnels. Rio subcontracted out the work of removing asbestos-contaminated material from the tunnels, soliciting bids from two experienced asbestos-removal companies:

---

** Honorable William F. Downes, District Judge, United States District Court for the District of Wyoming, sitting by designation.

Dominion Services (Dominion) and Front Range. Rio sought Dominion's bid first, inviting Dominion to the formal site inspection where engineering representatives were available to answer questions about the project. See Appellee's App., Tab 2 at 5; Tab 6 at 29-30.

The tunnels were small--36 by 42 inches. Id., Tab 22 at 125. Dominion was unable to crawl the tunnels due to leaking steam, heat, and pipe congestion, id., Tab 6 at 30, 31-33, but looked down and climbed down some manholes, id., Tab 6 at 39-40. Dominion bid $229,731, Appellant's App. at 116-18, informing Rio that it could not go lower because, based on its prior experience with the deteriorating tunnels at Fitzsimmons, there would be "measurable quantities" of dirt to remove. Appellee's App., Tab 6 at 35-37, Tab 18 at 109.

Rio then solicited a bid from Front Range, without telling Front Range that there were likely to be measurable quantities of dirt in the Fitzsimmons tunnels that might not otherwise be anticipated. Id., Tab 10 at 73. Rio did not invite Front Range to the formal site inspection, see id., Tab 2 at 5, and Front Range inspected the site on its own. Front Range was unable to crawl the tunnels for the same reasons as Dominion, id., Tab 4 at 13-14, but looked in accessible manholes, as Dominion had done, id., Tab 4 at 10, 14-16. Nobody told Front Range that there was a manageable length of tunnel that could be crawled. Id., Tab 5 at 21. Front Range bid $156,640, see Appellant's App. at 115, estimating based on its

investigation at Fitzsimmons, photographs taken there, and experience on tunnel jobs elsewhere that there would be one to two inches of dirt. Appellee's App., Tab 5 at 22-23; Tab 14; Tab 4 at 11-13, 17.

Mr. Martinez of Rio testified that he expected there was one-half to one inch of contaminated dirt in the tunnels. Id., Tab 10 at 74. Rio accepted Front Range's lower bid, but used Dominion's higher bid in its contract with the Small Business Administration (the prime contractor for the Department of the Army). See id., Tab 12 at 92. Rio never told the Army it had accepted Front Range's lower bid. Id., Tab 10 at 72.

Front Range actually encountered staggering quantities of dirt in the steam tunnels--up to ten and twelve inches in some areas. Id., Tab 7 at 43-44, 48; Tab 24 at 127. Instead of requiring two semi trailers to remove contaminated material as Front Range had estimated, the job required six full and two partial semi loads. Id., Tab 5 at 24. The amount of material found was far in excess of even Dominion's estimate, id., Tab 23 at 126, and was described as "unnormal," id., Tab 7 at 46, and "a nightmare," id., Tab 7 at 44. Martinez admitted that neither party contemplated the huge quantities of dirt that Front Range actually discovered. Id., Tab 10 at 84.

Front Range spent three-fourths of its time on this job removing dirt by hand. Id., Tab 3 at 9. Its costs of performance increased and its work schedule

was delayed. Rio responded by threatening to forfeit Front Range's bond and take over the work. Id., Tab 16 at 100.

Because Rio, not Front Range, had privity of contract with the Army, Front Range sent its claim for equitable adjustment to the Army through Rio. Id., Tab 10 at 75-76. The Army denied the claim, in part because it believed Rio had unclean hands and intended to profit from Front Range's lack of due diligence and knowledge about the problems in the tunnels. Appellant's App. at 123-24; Appellee's App., Tab 9 at 61-62; Tab 10 at 79. Rio allowed the time to appeal the denial to expire, Appellee's App., Tab 10 at 76-77, even though Front Range notified Rio that a successful appeal would offset claims Front Range had against Rio. Id., Tab 21 at 123. Rio also did not pursue a formal claim to the Army for its own alleged damages caused by Front Range's delay. Id., Tab 17 at 101-08; Tab 10 at 78, 80-83. Instead, Rio withheld partial payment from Front Range on their original subcontract to cover its alleged damages. Id., Tab 10 at 85.

Front Range filed this suit against Rio and its surety, American Bonding Company, under the Miller Act, seeking money withheld on its original contract with Rio; compensation under quantum meruit for extra work not contemplated by the contract; and attorney's fees, based on its allegation that Rio acted in bad faith, vexatiously, wantonly, or for oppressive reasons with respect to Front Range. Rio counterclaimed against Front Range for breach of contract.

The case was submitted to a jury, which found in favor of Front Range on its claims, awarding it $35,770 on its breach of contract claim and $119,460 on its claim for quantum meruit, and finding that Rio acted in bad faith, vexatiously, wantonly, or for oppressive reasons with respect to Front Range. See Appellee's App., Tab 1 at 1-2, 4 (verdict form). The jury underlined the word "wantonly" on the verdict form. Id., Tab 1 at 4. The jury found in favor of Rio on its counterclaim, awarding Rio $8,981. See id., Tab 1 at 3. Based on the jury's finding that Rio acted in bad faith, vexatiously, wantonly, or for oppressive reasons with respect to Front Range, the district court ordered Rio to pay Front Range $106,502 for its attorney's fees. See Appellant's App. at 48, 55 (district court order on attorney's fees).

Rio argues on appeal that: (1) the finding that Front Range is entitled to recover under quantum meruit is erroneous because the contract between Rio and Front Range clearly and unambiguously required that all asbestos-contaminated material be removed from the tunnels; and (2) the findings that Rio possessed superior knowledge and acted in bad faith toward Front Range are in error in view of the fact that Rio lacked any information not equally available to Front Range, and the award of attorney's fees based on these findings cannot stand.

We reject Rio's claims of error. As a preliminary matter, "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the

evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." Fed. R. App. P. 10(b)(2). Although Rio challenges the sufficiency of the evidence supporting certain findings, it submitted only brief excerpts from the trial transcript. Therefore, Rio failed to provide a sufficient record for our review. See Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979 (10th Cir. 1992).

More importantly, Rio failed to preserve any evidentiary issues for appeal. "As a general rule, a defendant's motion for directed verdict made at the close of the plaintiff's evidence is deemed waived if not renewed at the close of all the evidence." Karns v. Emerson Elec. Co., 817 F.2d 1452, 1455 (10th Cir. 1987)(using the terminology of the pre-1991 version of Fed. R. Civ. P. 50). "Failure to renew the motion . . . prevents a defendant from challenging the sufficiency of the evidence on appeal." Id.. The docket sheet reveals that Rio moved for judgment as a matter of law at the conclusion of Front Range's case-in-chief but, even assuming it specified the same grounds as it is raising on appeal, see Fed. R. Civ. P. 50(a)(2)(requiring that grounds for motion be specified); Hinds v. General Motors Corp., 988 F.2d 1039, 1045 (10th Cir. 1993)(holding "issues not raised in a motion for directed verdict may not be raised in a subsequent motion for judgment notwithstanding the verdict or considered on appeal"), it does not appear that Rio renewed its motion at the close

of all the evidence.  Appellate review of the sufficiency of the evidence is therefore precluded except for plain error, see United States v. Santistevan, 39 F.3d 250, 256 (10th Cir. 1994), which Rio does not argue and, in any case, we do not find from the facts as set out above.  Therefore, we reject Rio's evidentiary issues.

To the extent Rio attempts to bootstrap assertions of legal error onto issues framed in factual terms, these arguments are also waived.  Rio failed to object to the jury instructions or the verdict form, or, at least, if it did, it has failed to point out to us that it did.  See 10th Cir. R. 28.2(c).  Therefore, arguments directed at the law presented to the jury are waived unless an instruction was "patently plainly erroneous and prejudicial," Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1054 (10th Cir. 1988)(quoting Moe v. Avions Marcel Dassault-Breguet Aviation, 727 F.2d 917, 924 (10th Cir. 1984)), which Rio does not argue. We therefore will not review Rio's untimely claims of legal error.

Front Range's motion for attorney's fees and double costs pursuant to Fed. R. App. P. 38 is denied.  The judgment of the United States District Court for the Colorado is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge