RED EAGLE OIL COMPANY, an Oklahoma corporation, and Edna L. Sunderman, Appellees,

v.

ITT EASON OIL COMPANY, a Delaware corporation, Grant Supply Company, Wilson Pipe Specialties, and George Wilson, Grant Oil Company Tubular Corporation, and Allied Pipe & Supply, Inc., Appellants.

No. 59251.

Court of Appeals of Oklahoma, Division No. 4.

July 10, 1984.

Rehearing Denied Aug. 6, 1984.

Certiorari Denied Nov. 16, 1984.

Released for Publication by Order of Court of Appeals Nov. 21, 1984.

H.B. Watson, Jr., Richard K. Books, Sharon L. Taylor, Watson, McKenzie & Moricoli, Oklahoma City, for appellee Red Eagle Oil Co.

Donald R. Wilson, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellant ITT Eason Oil Co.

BRIGHTMIRE, Judge.

Plaintiff, Red Eagle Oil Company, operator of a Major County oil well, achieved a verdict in the amount of $102,815 compensatory and $350,000 punitive damages against defendant ITT Eason Company—a verdict based on findings that defendant breached a warranty of fitness and perpetrated a fraud on plaintiff in connection with the sale of oil well casing pipe. Judgment was rendered on the verdict.

Defendant's motion for judgment NOV, a new trial, and a remittitur was overruled and it appeals contending that (1) a verdict should have been directed for defendant; (2) the jury was misinstructed on the law pertaining to an issue of agency defendant raised; (3) the trial judge failed to hold that plaintiff sustained no damage as a result of the faulty pipe; (4) the trial court erred in not requiring plaintiff to elect between its theories of fraud and breach of warranty; and (5) punitive damages were not recoverable.

We affirm.

## I

Red Eagle Oil Company pleaded and adduced supporting evidence that in January, 1979, it mailed out a bid solicitation for certain API casing,[1] tubing and other equipment. One respondent was Crescent Supply Company, a division of defendant ITT Eason. It submitted a written bid offering to supply API seamless casing. Plaintiff accepted this offer by letter dated February 14, 1979.

Soon thereafter, however, on February 23, 1979, plaintiff wrote Crescent saying that he had just had an unfortunate experience with some Rumanian pipe, canceled the February 14 order, and declared it would use only pipe made in the United States or Japan.

Upon receipt of this letter, Crescent asked an official of its Houston supplier to accompany its own representative on a visit to plaintiff in an effort to gain reinstatement of the order. The official, George Wilson, did so, and among other things, the men told plaintiff that the pipe described in the bid met API specifications and that certain Canadian pipe offered in the bid turned out to be unavailable but some Spanish pipe was, and it had the same specifications as the Canadian. The Houston man, according to plaintiff's evidence, went further and represented that his company had tested each joint of subject pipe and found it to meet API specifications. Based on these representations plaintiff reinstated the February 14 order.

Some 8,660 feet of 4½ inch casing was received from defendant on March 4, 1979, and was used in completing what is called the Sunderman No. 1 well. Once in place, however, the hole lost all pressure due, as it turned out, to a split in the casing. Completion was attempted, nevertheless, at two formation levels, but during the fracing process another split developed in the casing pipe. Repairs of the leaking pipe cost $102,815.

Other damage resulting from the defective pipe, alleged plaintiff, included its inability to accomplish a dual completion in two productive zones requiring the drilling

---

**1.** API stands for American Petroleum Institute. Use of the API monogram on a product is a warranty that the manufacturer has a license to use it and that the product conforms to applicable API specifications.

of another well at a cost of $430,000 in order to protect a common source of supply. And, with regard to the first well, plaintiff lost oil and gas having a market value of $975,000 because the leaky pipe prevented it from attaining good fracture treatment.

Plaintiff further stated that the casing did not meet API requirements of minimum dimensional thickness and of flattening tests on welded pipe, and was defective in that the interior of the pipe was cracked, causing a stress concentration effect.

Finally plaintiff said the representations made by defendant in order to gain reinstatement of the canceled order were material, false and willful and for such fraud defendant should be punished by being required to pay $5,000,000 exemplary damages to plaintiff.

Trial began February 24, 1982, and the jury returned the verdict we mentioned earlier.

## II

Defendant's first point—that a verdict should have been directed for it—is premised on the conclusion that there were several things mentioned during the course of the trial that could have been possible causes of the ruptured pipe and, in order to find that defendant supplied defective or below API grade casing, the jury had to draw one inference from another. This, the argument goes, resulted in a verdict unacceptably founded on speculation and conjecture.

■ The lack of merit in this contention lies partly in defendant's misapprehension of the law it relies on and partly in its appraisal of the evidence. To begin with, a factfinder has never been forbidden in this state to base one inference on another in the factfinding process. The rule was succinctly stated many years ago in *Gypsy Oil Co. v. Ginn*, 152 Okl. 30, 32, 3 P.2d 714, 717 (1931). "A guess cannot be based on a guess, nor a guess on an inference, nor an inference on a guess, but an inference may be based upon an inference, if the inference is a justifiable conclusion based upon competent evidence, either direct or circumstantial." In further explanation regarding the rule's application, the court said that "the facts must be of such a nature and so related to each other that the inference contended for is the more probable or reasonable [one] to be drawn therefrom." The *Ginn* concept was later applied in *Morningside Hospital & Training School For Nurses v. Pennington*, 189 Okl. 170, 114 P.2d 943 (1941) and recognized in *McConnell v. Oklahoma Gas & Electric Co.*, 563 P.2d 632 (Okla.1977).

■ There remains, then, the decisive question of whether the evidence was sufficient to justify the jury inferring that it was more probable or reasonable that, contrary to defendant's representations, the pipe supplied by defendant was either defective or failed to meet the required quality specifications in a material way, and that restoration of the canceled contract was induced by such false representations. Our review of the record convinces us it was.

ITT Eason's evidentiary challenge is focused on these specific factual issues: (1) did it furnish the pipe in question; (2) was the pipe defective; and (3) did the defect exist when the pipe left Crescent's control. The argument is that with regard to each of these material facts the factfinder must resort to impermissible speculative inferences.

We disagree. Concerning the first issue, there was direct evidence that the only 4½ inch casing plaintiff had at the time in question was that received from Crescent and that only Crescent pipe was placed in the Sunderman No. 1 well.

With regard to the second issue—relating to the quality of subject pipe—plaintiff's expert, a metallurgist, said he carried out various tests on both the Rumanian and Spanish casing and described the results in detail. He concluded that both failed to meet API specifications and were of a lower quality than that represented by Crescent and its supplier. The Rumanian casing exhibited extensive cracking—defects created during the manufacturing

process. The Spanish pipe, according to the expert, likewise failed to meet the minimum API weight and grade requirements defendant had represented it would. More specifically the Spanish pipe failed both flattening and tensile tests which indicated low ductility. And a microstructural examination revealed "the absence of sufficient normalizing heat subsequent to weld." The pipe should have been able to withstand 3,000 pounds of pressure but failed at only 1,600 pounds of pressure in the well. Such failure, opined the scientist, had to result from defectiveness. Such conclusion, based as it was on competent evidence, was justifiably based on a reasonable inference.

And finally, with regard to the third issue—whether such defects were present when Crescent delivered the pipe—there were at least two evidentiary bases for the jury to find it was. First, the jury would have had to reject reality in order to find that post-delivery handling of the pipe caused a change in the weight and grade of the pipe, its low ductility, or the manufacturing-related cracking. Second, plaintiff adduced direct evidence that no visible defects existed when the pipe was delivered and there was no evidence the pipe was damaged during installation in the well.

We hold, therefore, that denial of ITT Eason's motion for a directed verdict was correct.

## III

Defendant's second contention—that the court erred with respect to its agency instruction—is likewise without merit.

Defendant's main complaint is that its requested instruction No. 8 concerning the law of agency should have been given rather than the one the trial court gave. The principal difference between it and the one given was that defendant's proposal contained a paragraph explaining the difference between an agent and an independent contractor.

■ Refusal of the request was not error. The factual situation did not lend

itself to such an issue. The instruction given by the court was correct and adequate. As a matter of fact, as we view the evidence, defendant got more than it was entitled to. We think there was no agency issue to resolve for the simple reason that Crescent admitted it asked Wilson to accompany its representative on a visit to plaintiff's officials for the purpose of helping Crescent retain the order. Wilson's complained-of misrepresentations were thus made at the request of, in the presence of, and on behalf of an acquiescent Crescent. Hence, aside from the question of whether an agency was created, Crescent impliedly approved of Wilson's representations, implicitly adopted them, and retained the benefits flowing from them. These facts alone, it seems to us, estop defendant from attempting to disclaim responsibility for them on the specious theory that Wilson was acting solely for its own benefit as an independent contractor.

We might add parenthetically that, even if the independent contractor concept were to obtain, defendant would be faced with the legal reality that it had a nondelegable duty to tell the purchaser the truth about the product it was trying to sell—a duty it could not evade by contracting promotional activity out to a third party.

## IV

Defendant's third proposition is that the trial court failed to rule that plaintiff sustained no damage as a matter of law.

The contention is that plaintiff could have suffered no loss as a result of the pipe repair because it had no working interest ownership in subject well. In its supporting argument, it says it "is not an issue of real party in interest but one of proof of damages." Two of the cases it relies on turn on the conclusion that a party plaintiff who possesses no cause of action has no capacity to bring a lawsuit. See *Walker v. Duncan*, 469 P.2d 647 (Okla.1970); *Frisco Lumber Co. v. Waldock*, 71 Okl. 197, 176 P. 220 (1918). The third case—*Carraco Oil Co. v. Roberts*, 397 P.2d 126 (Okla.1964)

—deals with the substitution of a party plaintiff problem and is inapposite.

██ Plaintiff's evidence is that its agent held naked title to the lease estate in question and that plaintiff was the beneficial owner of the working interest with regard to the wells in question. Defendant offered no evidence to the contrary. We hold that it was sufficiently established that plaintiff suffered damage, possessed a cause of action, and had capacity to bring this lawsuit.

### V

Crescent's final assignment of error is that Red Eagle should have been required "to elect between its theories based on fraud and based on contract arising out of the same identical acts and [trial court] erred in submitting punitive damages to the jury."

██ The short answer to this contention is that such an election is not required. Recovery may be sought on both tort and contract theories. *Whitney v. Miller*, 158 Okl. 294, 13 P.2d 110 (1932). Plaintiff divided its petition into what it called three causes of action. In them it alleged both that a warranty of fitness was breached, and that defendant tortiously induced it to buy subject defective and low grade pipe by means of material misrepresentations of fact.

██ Fraudulently inducing one to enter into a sales contract is an actionable tort. *Hobbs v. Smith*, 27 Okl. 830, 115 P. 347 (1911). And with regard to such tort, both compensatory and punitive damages are recoverable. *Z.D. Howard Co. v. Cartwright*, 537 P.2d 345 (Okla.1975).

Defendant's last complaint is without merit.

The judgment is affirmed.

DeMIER, P.J., and STUBBLEFIELD, J., concur.