**OKLAHOMA FEDERATED GOLD AND NUMISMATICS, INC.,**
**Plaintiff–Appellee,**

**v.**

**Michael W. BLODGETT,**
**Defendant–Appellant.**

**No. 92–5199.**

United States Court of Appeals,
Tenth Circuit.

May 16, 1994.

Jack Nordby (Ronald I. Meshbesher and James H. Gilbert, of Meshbesher & Spence, Ltd., Minneapolis, MN, with him on the briefs), of Meshbesher & Spence, Ltd., Minneapolis, MN, for defendant-appellant.

Thomas M. Affeldt (Keith O. McArtor, of Savage, O'Donnell, Scott, McNulty, Affeldt & Gentges, Tulsa, OK, with him on the brief), of Savage, O'Donnell, Scott, McNulty, Affeldt & Gentges, Tulsa, OK, for plaintiff-appellee.

Before TACHA and BARRETT, Circuit Judges, and KANE, District Judge.*

TACHA, Circuit Judge.

Defendant-appellant Michael W. Blodgett appeals from an order of the district court imposing sanctions against him for his failure to comply with the Federal Rules of Civil Procedure during discovery. Mr. Blodgett also challenges a jury verdict against him for fraud and conversion. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

This litigation arose out of a transaction involving a set of silver dollars known as the "John W. Highfill Collection" (the "Highfill Collection"). Oklahoma Federated Gold and Numismatics, Inc. ("Oklahoma Federated"), operated by John W. Highfill, is a wholesaler of numismatic coins. Mr. Blodgett, president of T.G. Morgan Inc. ("T.G. Morgan"), is a retailer of such numismatic coins. Mr. Blodgett represented to Mr. Highfill that he had a buyer for the Highfill Collection at a price of five million dollars. However, he said he needed a sample of coins to show the buyer in order to close the deal. Three coins from the Highfill Collection were sent to Mr. Blodgett. Mr. Blodgett's check for the coins was returned for insufficient funds and he never paid for, or returned, the coins. Mr. Blodgett sold the coins and retained the proceeds. Oklahoma Federated brought suit against Mr. Blodgett in September 1991 alleging fraud and conversion, and a jury returned a verdict in favor of Oklahoma Federated in

the amount of $750,000 in compensatory and $375,000 in punitive damages.

In November 1991 Mr. Blodgett was served with requests for production of documents and interrogatories. Plaintiff's counsel requested that this discovery be completed prior to a scheduled deposition of Mr. Blodgett. The interrogatories and requests for production were never answered. On July 16, 1992 the district court ordered that all outstanding discovery be completed by July 23, 1992. This deadline was not met. Mr. Blodgett also failed to exchange a witness list and to submit an exhibit list by the required deadline.

As part of pretrial discovery, plaintiff also attempted to depose Mr. Blodgett in December 1991. This attempt was unsuccessful. In March 1992 plaintiff's counsel filed a notice to take Mr. Blodgett's deposition and then contacted Mr. Blodgett's attorney to produce Mr. Blodgett for deposition. However, due to a scheduling conflict with Mr. Blodgett's counsel, Mr. Blodgett was not deposed. Following a pretrial conference, the district court ordered Mr. Blodgett to make himself available for deposition by July 31, 1992. Mr. Blodgett called plaintiff's attorney and proposed a July 31, 1992 deposition in Minneapolis. On July 20, 1992 Mr. Blodgett sent plaintiff's attorney a fax again suggesting a July 31, 1992 deposition and indicating he would be back in touch with counsel prior to that date to confirm the availability of documents. Mr. Blodgett never contacted plaintiff's counsel about the documents. Because he had no indication of whether any documents would be available for the deposition, plaintiff's attorney informed Mr. Blodgett on July 29, 1992 that he would not be at the July 31, 1992 deposition. On the Monday prior to trial, Mr. Blodgett was in plaintiff's attorney's office in Oklahoma, yet he refused to be deposed at that time. Mr. Blodgett's deposition was never taken.

During the eleven months leading up to trial, Mr. Blodgett had four different attorneys enter appearances on his behalf. However, Mr. Blodgett appeared pro se at trial.

---

* The Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

Because Mr. Blodgett failed to comply with the Federal Rules of Civil Procedure during discovery, the district court imposed a sanction preventing him from presenting any witnesses, exhibits, testimony or evidence in the case. Mr. Blodgett was permitted to cross-examine plaintiff's witnesses and to use any exhibits offered by plaintiff.

Mr. Blodgett appeals the discovery sanctions and alleges the district court erred in: (1) instructing the jury on the discovery sanctions; (2) allowing the action against him to proceed contrary to Oklahoma statute; (3) not staying the case pursuant to the Bankruptcy Code; (4) finding sufficient evidence to support a conviction for fraud; and (5) awarding punitive damages.

## II. ANALYSIS

### A. Discovery Sanctions

■ Mr. Blodgett argues that the discovery sanctions imposed by the trial court were unwarranted, especially in light of the fact that he brought this action pro se. Mr. Blodgett was unrepresented at trial. However, during the first six months of this litigation he was represented by counsel who filed an answer and counterclaim, served discovery requests on plaintiff and attended a scheduling hearing. Other attorneys entered appearances on Mr. Blodgett's behalf prior to trial and one filed for an extension to respond to plaintiff's motion for summary judgment. Mr. Blodgett maintains, however, that his counsel did not provide him with any substantive legal service because he did not pay them.

■ We recognize that we construe some aspects of a pro se litigants lawsuit liberally. *See Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992) (pleadings), *cert. denied,* — U.S. —, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993). "[H]e nevertheless must follow the same rules of procedure that govern other litigants." *Id.* When imposing discovery sanctions against a pro se litigant, the court should carefully consider whether some sanction short of dismissal is appropriate so that the litigant does not unknowingly lose his right of access to the courts because of a technical violation. *See Ehrenhaus v. Reyn-*

*olds,* 965 F.2d 916, 920 n. 3 (10th Cir.1992); *see also Anderson v. Home Ins. Co.,* 724 F.2d 82, 84 (8th Cir.1983) (dismissing pro se litigant's complaint with prejudice for failure to answer interrogatories following an extension and a court order to comply). Here, Mr. Blodgett was represented for a significant portion of this litigation and his attorneys were substantially involved in the proceedings. At a July 16, 1992 hearing, the trial court ordered Mr. Blodgett to respond to the plaintiff's outstanding discovery requests and make himself available for deposition. He did not effectively do so. While Mr. Blodgett may have appeared pro se at trial, he cannot convincingly maintain that he was unaware of the need to comply with the discovery requests and deadlines or that he was unaware of the consequences of his failure to do so.

■ Under Fed.R.Civ.P. 37(d), if a party fails to appear for a deposition after proper notice or fails to answer interrogatories or to respond to a request for production, the court may, among other sanctions, refuse to allow the disobedient party to present evidence. Rule 16(f) permits a district court, in its discretion, to impose these same sanctions for failure to comply with a pretrial scheduling order. Fed.R.Civ.P. 16(f). "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." *Ehrenhaus,* 965 F.2d at 920. We review the imposition of discovery sanctions for an abuse of discretion, *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976), considering the totality of the circumstances. *Toma v. City of Weatherford,* 846 F.2d 58, 60 (10th Cir.1988). "The district court's discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular "claim" which was at issue in the order to provide discovery.'" *Ehrenhaus,* 965 F.2d at 920–21 (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2106–07, 72 L.Ed.2d 492 (1982)).

Mr. Blodgett has not presented any explanation for why he did not respond to the interrogatories and requests for production

or why he did not comply with the pretrial scheduling order to provide witness and exhibit lists. Mr. Blodgett does claim that he made himself available for deposition prior to the court's scheduled deadline, but that plaintiff's counsel cancelled the deposition. While Mr. Blodgett did inform plaintiff's counsel he would be available for deposition on the final day of the court's deadline, he did not submit the documents or respond to the interrogatories necessary for plaintiff to conduct a meaningful deposition. Therefore, the district court found that Mr. Blodgett violated the court order by not making himself available for deposition. Because Mr. Blodgett failed to comply with the discovery requests of plaintiff or to make himself available for deposition, despite a court order, we cannot say that the court abused its discretion by refusing to allow Mr. Blodgett to present any evidence in this case.

 The trial court instructed the jury regarding the reason Mr. Blodgett would not be presenting any evidence at trial.[1] The trial court has wide discretion in stating facts and commenting on the evidence. *See Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1154 (10th Cir.), *cert. denied*, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978). It is within the trial court's power to direct the trial "in a manner reasonably thought to bring about a just result and in pursuit of that goal nonprejudicial comments may be made by the trial court from time to time." *Id.* Conduct of trial proceedings will not be disturbed on appeal "unless it affirmatively appears from the record that the trial court abused its discretion." *Id.* at 1149.

In instructing the jury on why Mr. Blodgett would not be presenting evidence, the trial court stated:

Before you hear the opening statements in this case, I'm going to tell you something about this case that is very unusual—unusual in that it is rare in my 13 years as a judge that I have ever had to do this, but I did it in this case.

. . . .

Now, the very strange part about this case is the fact that in reference to that discovery, although now for in the neighborhood of six or eight months the plaintiff in the case served written requests upon the defendant, Mr. Blodgett, for answers and written requests for prompt and timely document production, and requested on numerous occasions to take his deposition, the Court has entered an order in this case finding that although numerous requests for many months along that line were done, and although Mr. Blodgett from time to time had about three different lawyers in this case over the last 11 months, the Court has entered an order finding in this case that Mr. Blodgett never timely and properly answered the questions he was supposed to answer in the interrogatories, Mr. Blodgett never produced the documents that he was supposed to in a timely fashion, and Mr. Blodgett refused and failed to appear for a deposition as he was supposed to and as is provided in these rules. He just didn't do it.

For that reason—and the interesting thing about this case that is highly unusual is the fact that occurred and the fact as a result of it the Court had to enter an order that because he failed to comply with the rules of the court and the rules set by the

---

1. The trial court and Mr. Blodgett discussed what the jury would be told concerning the discovery sanctions.

*The Court:* "Do you want me to advise the jury as discreetly as I can on that subject, or do you just want that to be left unsaid?"

*Mr. Blodgett:* "I think we'll just leave it unsaid."

*The Court:* "All right. As I said, I'll play that matter by ear as we move along here. It may be appropriate for the Court to say something on that. If you prefer I not say something that the Court has denied you that right for the reasons previously stated on this record, I'll do so."

*Mr. Blodgett:* "I'll defer to the judgment of the Court on that."

*The Court:* "Are you interested in my making such a statement? I'll be happy to try and to make it as balanced as I can. The jury may at sometime wonder why you're not offering evidence in this case, for example. And if you want to leave that to my discretion—"

*Mr. Blodgett:* "I'll leave it to your discretion."

*The Court:* "—that's the way it will be done."

*Mr. Blodgett:* "Right."

Congress of the United States ... [concerning discovery] the Court has entered a rare and unusual order in this case that Mr. Blodgett will not be permitted on his behalf to take the witness stand in this case.

. . . .

So for the reasons that I have stated here for noncompliance with the court rules set down by the United States Congress, as I said, I have entered a very unusual order in this case. . . .

As I've stated to you, this is a very rare and unusual order for the Court to submit, and the reason I'm telling you this is I want you to understand why Mr. Blodgett during his phase of the defense of the case will most probably not be getting on the witness stand to explain. . . .

Considering the broad discretion given to the trial court in commenting on the evidence and directing the trial, coupled with Mr. Blodgett's admission that he would leave the decision on whether to comment on his sanctions to the court's discretion, we hold that the explanation by the trial court, while not being ideal in terms of brevity and characterization, does not rise to the level of an abuse of discretion.

### B. Okla.Stat.Ann. tit. 18, § 1124(B)

■■■■ Mr. Blodgett argues that Okla. Stat.Ann. tit. 18, § 1124(B)[2] precludes this action against him. We disagree. Section 1124(B) precludes actions against corporate officers to recover debts of the corporation. Plaintiff's action against Mr. Blodgett is brought against him personally for fraud and conversion. Under Oklahoma law, an officer may be held liable for the torts that he personally commits. *See United States Fidelity & Guar. Co. v. Sidwell*, 525 F.2d 472, 476 (10th Cir.1975) (construing Oklahoma law); *All Am. Car Wash, Inc. v. National Pride Equip., Inc.*, 550 F.Supp. 166, 169 (W.D.Okla.1981); *see also Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1553–54 (5th Cir.1985) (interpreting an identical section of the Delaware General Corporation Laws as prescribing the manner in which actions are pursued, not restricting causes of action that have traditionally been available). Because plaintiff's action is brought against Mr. Blodgett personally and not to recover any debt of his corporation, we find that the statute does not preclude plaintiff's claims against Mr. Blodgett.

### C. Automatic Stay

■■■■■ Oklahoma Federated's claims against T.G. Morgan were stayed under 11 U.S.C. § 362(a)(1) following T.G. Morgan's filing of a Chapter 11 bankruptcy. Mr. Blodgett argues that the proceedings against him should also have been stayed.

Under § 362(a)(1), a bankruptcy petition operates as a stay of

> the commencement or continuation ... of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). While § 362 extends the stay provisions of the Bankruptcy Code to the "debtor", the rule followed by this circuit and the general rule in other circuits is that the stay provision does not extend to solvent codefendants of the debtor. *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir.1984) (citing other circuits); *In re Metal Ctr., Inc.*, 31 B.R. 458, 462 (Bankr.D.Conn.1983) (automatic stay does not apply where codefendant is independently liable from debtor). A narrow exception allows a stay to be imposed under section 362(a)(1) against a nonbankrupt party in "unusual situations" as "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479

2. "No suit shall be brought against any officer, director or shareholder for any *debt of a corporation* of which he is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied." Okla.Stat.Ann. tit. 18, § 1124(B) (West 1986) (emphasis added).

U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). Mr. Blodgett does not fit into this narrow exception because Oklahoma Federated's claims against Mr. Blodgett are separate and independent from the claims asserted against T.G. Morgan which were stayed following its petition in bankruptcy. Section 362(a)(1) does not operate to stay Oklahoma Federated's claims against Mr. Blodgett.

### D. Sufficiency of the Evidence

Mr. Blodgett contends that there was insufficient evidence to support the verdict for fraud. "When a jury verdict is challenged on appeal, our review is limited to determining whether the record—viewed in the light most favorable to the prevailing party—contains substantial evidence to support the jury's decision." *Comcoa, Inc. v. NEC Tels., Inc.,* 931 F.2d 655, 663 (10th Cir.1991). "The jury, moreover, has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Kitchens v. Bryan County Nat'l Bank,* 825 F.2d 248, 251 (10th Cir.1987).

Under Oklahoma law, fraud requires a showing:

> (1) [t]hat defendant made a material representation; (2) that it was false; (3) that he made it when he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; [and] (6) that he thereby suffered injury....

*Ramsey v. Fowler,* 308 P.2d 654, 656 (Okla. 1957). Fraud is never presumed but must be established by "clear, satisfactory and convincing evidence." *Scrivner v. Scrivner,* 207 Okla. 225, 248 P.2d 1045, 1046 (1952). It may be proven, however, by circumstantial evidence. *Sellers v. Sellers,* 428 P.2d 230, 238–39 (Okla.1967). The evidence presented at trial showed that Mr. Blodgett told Mr. Highfill he had a buyer for the silver dollar

collection. Relying on this, Mr. Highfill sent the representative sample of silver dollars. Mr. Blodgett sold the coins, thereby destroying the integrity of the set, and he did not pay for the collection or return or pay for the sample coins he received from Oklahoma Federated. Considering all the evidence presented at trial and all the inferences to be drawn from the evidence, the jury could have found that all the necessary elements of fraud were met. We find substantial evidence to support the jury's verdict.[3]

### E. Punitive Damages

Punitive damages are available under Oklahoma law

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant....

Okla.Stat.Ann. tit. 23, § 9 (West 1987). Mr. Blodgett argues that the jury was improperly influenced by the trial court's explanation of Mr. Blodgett's pretrial conduct and the resulting sanctions imposed on him and that, the evidence does not support an award of punitive damages. "[A]bsent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate." *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/American Express Inc.,* 886 F.2d 1249, 1259 (10th Cir.1989) (quoting *Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 703 F.2d 1152, 1168 (10th Cir.1981) (en banc), *cert. denied,* 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983)).

Fraudulently inducing a party to enter into a contract constitutes a tort for which actual and punitive damages are available. *Red Eagle Oil Co. v. ITT Eason Oil Co.,* 693 P.2d 1280, 1284 (Okla.Ct.App.1984).

---

**3.** Mr. Blodgett's argument that plaintiff failed to conclusively establish all the elements of fraud is even more unappealing considering that much of the evidence concerning the sale of the coins and their proceeds was hidden from plaintiff by Mr. Blodgett's uncooperative discovery posture.

In *Misco Leasing, Inc. v. Keller*, 490 F.2d 545, 549 (10th Cir.1974), we considered Oklahoma law on punitive damages and found that "when there is a reckless and wanton disregard of another's rights, malice and evil intent may be inferred and punitive damages may be awarded." The jury could infer, from the evidence presented at trial, that Mr. Blodgett, by inducing Oklahoma Federated to send him the coins and then selling them without making payment, acted fraudulently and with wanton and reckless disregard of Oklahoma Federated's rights. We cannot say that the award of punitive damages is beyond the scope of the evidence before the jury, that it shocks the judicial conscience, or that it raises an irresistible inference of passion or prejudice. Accordingly, we find that the award of punitive damages was not in error.

### III. CONCLUSION

Because we find the trial court did not abuse its discretion in imposing discovery sanctions and because we find the rest of Mr. Blodgett's claims are without merit, we **AFFIRM**.