### In re INDEPENDENT SERVICE ORGANIZATIONS ANTITRUST LITIGATION

**This Document Applies to: CSU Holdings, Inc., et al. v. Xerox Corp. (D. Kan. No. 94–2102–EEO).**

**Civil Action No. MDL–1021.**

United States District Court, D. Kansas.

June 3, 1997.

James A. Hennefer, San Francisco, CA, Maxwell M. Blecher, for Acquisition Specialists, Inc., Tecspec, Inc., Consolidated Photo Copy, Inc., Copier Rebuild Center, Inc., CPO, Ltd., Gradwell Company, Inc., Graphic Corporation of Alabama.

Peter K. Bleakley, Arnold & Porter, Washington, DC, Peter W. Marshall, Xerox Corporation, Stamford, CT, Michael G. Norris, Norris, Keplinger & Logan, Overland Park, KS, Larry O'Rourke, E. Robert Yoches, Vincent P. Kovalick, Leslie I. Bookoff, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for Xerox Corporation.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion of plaintiff's CSU Holdings, Inc., et al. ("CSU") for discovery sanctions against Xerox Corporation ("Xerox") (Doc. # 548). After careful consideration of the parties' briefs, including Xerox's supplemental memorandum in opposition, the court is now prepared to rule. For the reasons set forth below, plaintiff's motion will be granted in part.

### Factual Background

On March 29, 1996, CSU asked Xerox in an interrogatory to:

[i]dentify the date on which Xerox first became aware that CSU was using diagnostic software (as to which Xerox purports to possess copyright and/or patent or other proprietary rights) to service high-volume copiers and printers, and describe the facts that first gave rise to such knowledge.

Xerox responded that

[c]ounsel for Xerox learned that CSU has used Xerox's diagnostic software through its discovery in this case. This discovery has been through deposition testimony designated "Highly Confidential" pursuant to the Protective Order entered in this case and has not been provided to Xerox. Accordingly, this information gathered through discovery is not "available to the party" within the meaning of Rule 33(a). However, the Preliminary Injunction en-

Eric D. Braverman, Employers Reinsurance Corporation, Overland Park, KS, P. John Owen, Lori R. Schultz, Morrison & Hecker, Kansas City, MO, Michael C. Manning, Morrison & Hecker, Phoenix, AZ; for CSU Holdings, Inc.

tered by Judge O'Connor, which is a public document, states that "CSU officials have admitted copying Xerox copyrighted manuals and software ..." Accordingly, Xerox learned on December 11, 1995, the date on which Judge O'Connor's Memorandum and Order was issued.

Xerox later amended its interrogatory answer to reflect that Xerox only "suspected" prior to filing this action that CSU used 5090 diagnostic software.

In January 1997, Xerox produced records reviewed by Kenneth G. Elzinga, an expert witness retained by Xerox in this case, who also was retained by Xerox in the R & D case. These documents included notes summarizing a two-day meeting Mr. Elzinga attended in February 1993. Mr. Elzinga stated in the notes:

> Sharon Allen has observed that CSU accounts sometimes have more recent proprietary software than CSU should be able to have. PARS is an example of such an account. In other cases, when CSU was about to install Xerox-proprietary software on a machine, Xerox has told the account that the software is protected, and the account has backed off.

> \* \* \* \* \* \*

> CSU copies software from Xerox, or purchases a machine and gets software. Sharon Allen [a Xerox employee] has checked accounts that CSU services that have recent Xerox proprietary software (PARS is an example of such an account). CSU has gotten chips that had enhancement features and have [sic] reproduced chips from the originals or, according to Hank Sipsma [a Xerox employee], ISO simply has copied the updates off machines being serviced by Xerox. Hank Sipsma has seen a former Xerox employee take the diagnostic software with him, and train others on the 5090 with it.

Mr. Elzinga testified that he believed an attorney from Arnold & Porter and a Xerox in-house attorney were present at the meeting. Xerox did not disclose the names of Ms. Allen or Mr. Sipsma in its rule 26 disclosures of individuals likely to have discoverable information.

*Analysis*

## I. Truthfulness Of Xerox's Discovery Representations.

### A. *Notes Of Mr. Sipsma's Statements.*

█ Mr. Elzinga's notes state that CSU acquired and reproduced chips containing Xerox software. Then, Mr. Elzinga recites information provided by Mr. Sipsma regarding Independent Service Organizations' ("ISOs") use of Xerox's diagnostic software. Interestingly, Xerox submits the statements of its counsel to explain the notes. Counsel for Xerox asserts that the notes are erroneous and Mr. Sipsma's statements actually should refer to a Phoenix-based ISO, not CSU. The court finds counsel's explanations unavailing. Both Mr. Sipsma in his affidavit and counsel for Xerox in their memorandum fail to explain the meaning of the first clause in Mr. Elzinga's notes which does not refer specifically to Mr. Sipsma. Mr. Elzinga stated that "CSU has gotten chips that had enhancement features and have [sic] reproduced chips from the originals." Mr. Elzinga's notes indicate that Xerox had some notice in February 1993 of CSJ's use and copying of chips containing Xerox software. Such information apparently should have been revealed in response to CSU's interrogatory.

### B. *Notes Of Ms. Allen's Statements.*

Xerox claims that Ms. Allen's statements reflect only a "suspicion" of copying by CSU, which is insufficient to support the filing of the lawsuit. CSU requested in its interrogatory, however, the date on which Xerox first became aware that CSU was using diagnostic software, not the date on which Xerox first could have filed a lawsuit for patent or copyright infringement. Mr. Elzinga's notes which include Ms. Allen's observations of CSU's use of diagnostic software surely come within the scope of CSU's interrogatory.

Xerox argues that Ms. Allen's name was revealed in other testimony and documents. Xerox fails to show that CSU was put on notice in discovery that Ms. Allen had knowledge of CSU's acquisition and use of Xerox software and upgrades on equipment serviced by CSU. Thus, Ms. Allen's name should

have been revealed in Xerox's rule 26(a) disclosures.[1]

## II. Sanctions Against Xerox For Its Discovery Conduct.

 The imposition of sanctions for discovery misconduct is within the discretion of the court. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). In determining an appropriate sanction, this court is mindful of the purposes of imposing sanctions which include deterring future litigation abuse, penalizing present litigation abuse, and compensating victims of litigation abuse. *See id.* at 643, 96 S.Ct. at 2781; *Resolution Trust Corp. v. Williams*, 162 F.R.D. 654, 660 (D.Kan.1995).

 This court previously declined to impose severe sanctions on CSU despite CSU's discovery conduct and multiple violations of the court's preliminary injunction. Nevertheless, CSU requests that the court drop the sanction sledgehammer on Xerox for its discovery conduct. Although Xerox's explanations for its omissions in discovery are questionable, Xerox's conduct does not warrant the extreme sanction of precluding it from denying CSU's laches and statute of limitations defenses. *See Parrott v. Wilson*, 707 F.2d 1262, 1273 n. 26 (11th Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *Cal Dive Int'l, Inc. v. M/V Tzimin*, 127 F.R.D. 213, 215 (S.D.Ala. 1989). Such a sanction could preclude Xerox from recovering on all of its claims for damages based on CSU's infringement of Xerox's copyrights prior to the time Xerox filed its counterclaims. Further, the only real prejudice and harm to CSU of Xerox's conduct is that CSU was precluded from taking the depositions of Ms. Allen and Mr. Sipsma. The court can remedy this harm by less destructive remedies than precluding evidence. *See Augustine v. Adams*, 169 F.R.D. 664, (D.Kan.1996) ("The sanction to be imposed should be the least severe of those available, which appears adequate to deter

and punish the wrongdoer.") (citing *White v. General Motors Corp., Inc.*, 908 F.2d 675, 685 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991)); *Cal Dive*, 127 F.R.D. at 215 (court should limit discovery sanctions to the least destructive form). The court, therefore, will grant CSU leave to take the depositions of Ms. Allen and Mr. Sipsma on or before July 18, 1997. The court also will award to CSU, as sanctions against Xerox, the attorneys' fees and expenses incurred by CSU in bringing its motion for discovery sanctions (Doc. # 548). CSU shall serve and file an itemized statement of its attorneys' fees and expenses within 30 days. Xerox shall serve and file any objections within 10 days after service of CSU's statement of its fees and expenses.

CSU cites *Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136 (10th Cir.1994), for the proposition that Xerox should be precluded from presenting evidence on CSU's affirmative defenses of laches and statute of limitations. Xerox's conduct in this matter certainly does not rise to the level of the defendant's misconduct in *Blodgett*. In *Blodgett*, the court precluded defendant from presenting any evidence on plaintiff's claims as a sanction for defendant's (1) failure to answer plaintiff's interrogatories and requests for production despite a court order requiring him to do so, (2) failure to exchange a witness list and to submit an exhibit list by the required deadline, and (3) failure to make himself available for deposition before trial despite a court order requiring him to do so. *Id.* at 138–39. Here, there is no evidence that Xerox has flagrantly disregarded the court's orders or intentionally withheld relevant information.

IT IS THEREFORE ORDERED that CSU's motion for discovery sanctions (Doc. # 548) is granted in part as set forth herein.

---

1. Xerox indicates in its supplemental memorandum in opposition to CSU's motion for sanctions that Xerox is attempting to obtain a sworn statement from Ms. Allen regarding her knowledge of CSU's use of Xerox software. Xerox had over two months since the filing of CSU's motion to obtain such an affidavit. In addition, Mr. Elzinga's notes are sufficient to establish that Ms. Allen has some knowledge of CSU's use of Xerox software. The court believes that the precise extent of her knowledge can be more appropriately discovered in a deposition.