Maxine MEHUS, Plaintiff,

v.

EMPORIA STATE UNIVERSITY,
Defendant.

No. 03–2066–KHV.

United States District Court,
D. Kansas.

July 30, 2004.

Anne W. Schiavone, Kansas City, MO, R. Denise Henning, Stephen R. Bough, Henning & Bough, PC, Kansas City, MO, for Plaintiff.

Malcolm R. Burns, Lawrence, KS, Lori R. Schultz, Stinson Morrison Hecker LLP, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff Maxine Mehus, head volleyball coach at Emporia State University ("ESU"), alleges that ESU has violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Specifically, plaintiff alleges that ESU has paid her less than similarly situated male counterparts for equal work which requires similar effort, skill and responsibility, performed under similar working conditions, in violation of the EPA. Plaintiff also claims that in violation of Title VII, ESU subjected her to different terms, conditions and privileges of em-

ployment than similarly situated male colleagues by (1) providing her a ten-month appointment while providing 12–month appointments to similarly situated males; (2) requiring her to teach while not requiring similarly situated males to do so; and (3) paying her less than similarly situated males for equal work which requires substantially similar skill, effort and responsibility. This matter comes before the Court on *Emporia State University's Motion In Limine* (Doc. # 125) filed July 14, 2004. For reasons stated below, the Court sustains defendant's motion in part.

### 1. Inequitable Funding Of Volleyball Program

■ ESU argues that the Court should exclude any reference to its alleged violation of Title VII by providing the volleyball team fewer resources than the basketball and football teams because plaintiff abandoned this claim. Plaintiff agrees that evidence relating to inequitable funding is inadmissible, but argues that evidence relating to her opportunity to raise revenue through ticket and program sales is an integral part of her Title VII claim. ESU responds that if plaintiff is allowed to testify regarding her opportunity to raise revenue for the volleyball program, the Court should allow Emporia State to call Lamar Daniels to testify regarding ESU's compliance with Title IX.

ESU justifies the pay disparity between the volleyball, football and basketball coaches by arguing that the "male counterparts ... have jobs that require more or different skill, effort, supervision, and responsibility" and "[t]he revenue raised by the football and basketball teams through ticket sales, donations, and advertising help Emporia State University field other athletic teams." *Pretrial Order* (Doc. # 105) filed April 12, 2004. Evidence that ESU denied plaintiff the opportunity to raise revenue through ticket and program sales is therefore relevant to the stated reason for the pay disparity. Title IX has nothing to do with this, and a properly instructed jury will not be misled into finding for plaintiff based on a feared misperception that ESU is a "bad actor" because it does not adequately promote women's athletics.

### 2. Non–Compliance With Title IX

ESU asks the Court to exclude any reference to its alleged noncompliance with Title IX because plaintiff has dismissed her claims under 20 U.S.C. § 1681 *et seq.* and 34 C.F.R. § 106.1 *et seq.* (Title IX). Plaintiff does not intend to present evidence of Title IX violations and this portion of the motion is therefore sustained.

### 3. Hostile Work Environment At ESU

ESU asks the Court to exclude any reference to a hostile work environment because plaintiff dismissed her hostile work environment claims under Title VII and Title IX. See *Pretrial Order* (Doc. # 105) at 16(a) (Plaintiff's Theories of Recovery). Plaintiff does not oppose this portion of the motion and it is sustained.

### 4. Retaliatory Acts By ESU

■ At her deposition, plaintiff testified that Athletic Director Kent Weiser sent her a letter which threatened to retaliate because she decided to assert discrimination claims against ESU. ESU asks the Court to exclude such testimony at trial because (1) the pretrial order does not assert any such claim; and (2) plaintiff has not produced the letter in discovery. Plaintiff responds that (1) "the fact that ESU continues to this very day to treat plaintiff different than the male coaches is relevant evidence;" and (2) she does not

intend to introduce evidence at trial that was not produced in discovery.

The Court sustains the motion to exclude documentary evidence of any written communication in which Athletic Director Weiser threatened to retaliate because of plaintiff's decision to assert discrimination claims. The Court finds, however, that testimonial reference to the alleged communication need not be precluded. Plaintiff alleges an ongoing violation and such evidence might be relevant to the credibility and perhaps bias of Athletic Director Weiser, if he should testify.

■ In response to ESU's document production request for a copy of the letter, plaintiff on February 16, 2004 stated that she was in the process of locating it and agreed to produce it. Under D. Kan. Rule 37.1, "[a]ny motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 shall be filed and served within 30 days of the default or service of the response, answer or objection which is the subject of the motion, unless the time for filing of such motion is extended for good cause shown. Otherwise the objection to the default, response, answer, or objection shall be waived." ESU does not argue that disclosure was independently required under Rule 26(a), Fed.R.Civ.P., and it never filed a motion (let alone a timely motion) to compel production under Rule 37(a)(2)(B), Fed.R.Civ.P. Sanctions under Rule 37(b)(2)(A), (B), and (C)—which ESU cites in support of its argument—are therefore unavailable.

The fact that the pretrial order does not recite this item of evidence is immaterial. Plaintiff testified about this matter in her deposition and for good and sufficient reasons, the pretrial order does not require plaintiff to identify all evidence on which she will rely. ESU's motion on this point is overruled.

### 5. Emotional Distress

■ ESU asks the Court to exclude any testimony or documentation regarding plaintiff's emotional distress because in response to a request for production of documents, she has not produced 103 pages of medical records. Plaintiff responds that she has produced a copy of the relevant medical record and that she is entitled to testify regarding the effect of inequitable treatment on her emotional well-being.

ESU served a document production request for "medical records relating to the need for Maxine Mehus' prescription of Zoloft." By response dated February 16, 2004, plaintiff's counsel agreed to produce those records. Until it filed this motion, ESU made no effort to enforce counsel's agreement to produce the records. Two days after ESU filed its motion in limine, on July 16, 2004, plaintiff provided four pages of medical records. ESU complains that plaintiff's counsel selected these records from "scores of pages of records in the possession of plaintiff's counsel since February 2004," and that plaintiff's failure to provide all 103 pages of medical records has significantly prejudiced its ability to cross examine on plaintiff's alleged emotional distress.

The Court recognizes that the attorney who conducted discovery in this case has passed the reins to new counsel, but the unavoidable fact is that ESU's position on this issue is seriously compromised by the failure of former counsel to comply with D. Kan. Rules 37.1 and 37.2 and file a motion to compel production under Rule 37, Fed. R.Civ.P. Furthermore, nothing in the present record suggests that plaintiff has *not* produced all "medical records relating to the need for Maxine Mehus' prescription of Zoloft." ESU persists in mis-citing

Rule 37(C)[1] for the proposition that a party who without substantial justification fails to disclose information required by "discovery" may be sanctioned pursuant to Rules 37(b)(2)(A), (B) and (C) and 37(b)(2)(B). In fact, in relevant part, Rule 37(c) does not address "discovery" in general, but disclosures required by Rules 26(a) and 26(e)(1). ESU correctly notes that under Rule 37, if a party fails to respond to a request for production, the Court may refuse to let the disobedient party present evidence, see *Okla. Federated Gold & Numismatics, Inc. v. Blodgett,* 24 F.3d 136, 139 (10th Cir.1994), but sanctions under Rule 37(b) presuppose a party's failure to obey an order for discovery under Rule 37(a). ESU's motion to exclude medical records and testimony about plaintiff's emotional distress is therefore overruled.

## 5 [sic]. Sexual Relationships Of ESU Employees

■ ESU seeks to prevent testimony regarding an incident in which a former girlfriend of Kenny Wilhite, assistant football coach, sent ESU coaches and staff members an email which included a naked picture of Coach Wilhite. ESU argues that such evidence has no possible relevance and that it should be excluded under Rule 403, Fed.R.Evid., because its probative value is substantially outweighed by the danger of unfair prejudice. Plaintiff apparently argues that her suit involves disparate treatment, that "[a] perfect example of inequitable treatment is events surrounding [the] dissemination of a naked picture of Mr. Wilhite via email," and that evidence regarding the incident is therefore admissible. Plaintiff reasons that after the email, Coach Wilhite continued his employment "without repercussions," while in other respects the athletic director subjected her to "undue scrutiny."

While plaintiff claims that "[t]he version of the story presented by defense counsel is different than the evidence plaintiff intends to present at trial," she has not shared that version with the Court. On this record, the Court cannot imagine why Coach Wilhite should have been investigated or suffered "repercussions" on account of the incident, or how evidence about the email would assist the jury in deciding whether ESU subjected plaintiff to different terms, conditions and privileges of employment than similarly situated male colleagues by (1) providing her a ten-month appointment while providing 12–month appointments to similarly situated males; (2) requiring her to teach while not requiring similarly situated males to do so; and (3) paying her less than similarly situated males for equal work which requires substantially similar skill, effort and responsibility. Furthermore, even if the athletic director lied about the email having a virus, so that recipients would hopefully not open it, plaintiff has not established that such evidence should be admitted for any legitimate purpose under Rule 404(b), Fed. R.Evid.

Evidence regarding the email is excluded. Its relevance, if any, is substantially outweighed by the danger of unfair prejudice and waste of time under Rule 403.

## 6. NCAA Rules Violations

ESU asks the Court to exclude reference to NCAA rule violations and alleged violations, arguing that they have no relevance to the issues in this litigation and will cause undue prejudice, jury confusion and waste of time. Plaintiff opposes this request, anticipating that ESU will present evidence that she yelled at referees in

---

1. Presumably, ESU is referring to Rule 37(c).

violation of NCAA rules and these violations explain why she earns less than male coaches.

Nothing in the pretrial order suggests that ESU will attempt to explain plaintiff's pay disparity by reference to NCAA rule violations. The Court therefore sustains ESU's motion on this issue.

### 7. Grievance Committee

■ ESU asks the Court to prohibit trial testimony from Janet Borst and Marion Jones, members of the internal Grievance Committee which evaluated plaintiff's sex discrimination claim, and evidence of the Grievance Committee recommendations with regard to the athletic department. ESU argues that committee members have no first-hand knowledge of the discrimination alleged in this case; that their opinions as lay witnesses are inadmissible because they did not perceive any of the events at issue in this case; and that the Grievance Committee recommendations will confuse, mislead and invade the province of the jury. Plaintiff opposes ESU's request, arguing that the recommendations are admissions by a party opponent and that if the Court excludes the findings and recommendations of the Grievance Committee, it should allow evidence that plaintiff exhausted her ESU remedies before she filed suit.

Committee members lack personal knowledge of the alleged discrimination in this case and are not competent to testify thereto. Rule 602, Fed.R.Evid. Furthermore, opinion testimony that is not based on perception is inadmissible under Rule 701, Fed.R.Evid. *See Shrewsbury v. State Farm Mut. Auto. Ins. Co.,* No. 95–4183–RDR, 1997 WL 104113, at *3 (D.Kan. Feb.5, 1997). Accordingly, the Court excludes the findings of the Grievance Committee and sustains ESU's motion on this point.

■ Plaintiff cites no legal or factual support for her theory that the Grievance Committee recommendations are "admissions" by a party opponent, and the Court finds that they should be excluded. On this record, it appears that the recommendations constitute nothing more than the lay opinion of randomly selected faculty members and other individuals. Plaintiff has not shown that the Grievance Committee had any authority to recommend general changes in the administration of the athletics department at ESU. The fact that the Grievance Committee recommended better definition of "core athletics programs," re-evaluation of coaching staff job descriptions, and new job descriptions for coaches has no apparent relevance to the issues in this case. The Grievance Committee recommendation that ESU offer 12–month contracts to all coaches who are expected to recruit during summer months has slight relevance, but it is outweighed by dangers of confusion of the issues, undue delay and waste of time under Rule 403, Fed.R.Evid. Finally, the fact that plaintiff exhausted her ESU remedies before she filed suit is immaterial to the claims at issue here. ESU's motion on this point is sustained.

### 8. Other Allegations Of Sexual Harassment

ESU seeks to exclude evidence that it harassed, discriminated or retaliated against employees other than plaintiff, arguing that the relevance of such evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Plaintiff argues that her case is about disparate treatment and that "[i]f some of the witnesses listed by plaintiff have information regarding women being paid or treated different than men by defendant ESU, then that would be relevant, too." Neither party has identified specific

instances of harassment, discrimination or retaliation against employees other than plaintiff, and plaintiff has not established that such evidence should be admitted under Rule 404(b), Fed.R.Evid. ESU's motion on this point is therefore sustained.

### 9. Core Sports

 ESU asks the Court to prohibit any reference to "core sports," as former Athletic Director William Quayle may have applied that concept to volleyball, basketball and football programs at ESU. It argues that any reference would create a significant likelihood of jury confusion and should be excluded under Rule 403, Fed. R.Evid.; that the "core sports" designation predates the applicable two-year statute of limitations in this case; and that the "core sports" concept is irrelevant because it no longer exists. Plaintiff disagrees, arguing that ESU has documents which evidence an official position that even now, some sports (including volleyball) are "core sports" which merit preferential funding. Plaintiff insists that such evidence is relevant to the issues of equal pay and disparate treatment.

All of these arguments go to the weight rather than the admissibility of the evidence. Such evidence has clear relevance to plaintiff's claim that David Moe (men's basketball coach) and Brandon Schneider (women's basketball coach) are suitable comparators with regard to salary. Such testimony will not mislead the jury or cause it to improperly apply the law, and such evidence would not allow plaintiff to recover for acts that occurred more than two years before she filed suit. The fact that the designation no longer exists goes to the weight, not the admissibility, of the evidence.

**IT THEREFORE ORDERED** that *Emporia State University's Motion In Limine* (Doc. # 125) filed July 14, 2004 be

**SUSTAINED** as to paragraphs 2, 3, 5[sic], 6, 7 and 8 and **OVERRULED** as to paragraphs 5 and 9. As to paragraph 1, the motion is **SUSTAINED** as to general evidence relating to inequitable funding of volleyball and **OVERRULED** as to plaintiff's opportunity to raise revenue through ticket and program sales. As to paragraph 4, the motion is **SUSTAINED** as to documentary evidence of a communication from Kent Weiser and **OVERRULED** as to testimony concerning the alleged threat.

**IT FURTHER ORDERED** that the parties confer in good faith to resolve all outstanding objections to witnesses, exhibits and deposition testimony, based on the rulings contained in this order. The Court will not entertain any such objections unless and until the parties have attempted in good faith to resolve the dispute among themselves either in person or via telephone conference. If any objections remain after such conference, the objecting party shall notify the Court no later than one business day before trial.